CYNTHIA S. ARATO (SBN 156856)
carato@shapiroarato.com
AVERY D. MEDJUCK (*pro hac vice* forthcoming)
amedjuck@shapiroarato.com
SHAPIRO ARATO BACH LLP
1140 Avenue of the Americas, 17th Fl.
New York, New York 10036
Telephone: (212) 257-4880

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| SONY MUSIC ENTERTAINMENT, SONY MUSIC ENTERTAINMENT US LATIN LLC, ARISTA MUSIC, ARISTA RECORDS, LLC, ULTRA RECORDS, LLC, ZOMBA RECORDING LLC, RECORDS LABEL, LLC, and LAFACE RECORDS, LLC, <br><br> *Plaintiffs*, <br><br> v. <br><br> DESIGNER BRANDS INC., DSW SHOE WAREHOUSE, INC., TOPO ATHLETIC LLC, and DOES 1-25, <br><br> *Defendants*. | Case No. 2:25-cv-07285 <br><br> **COMPLAINT FOR:** <br><br> **1. DIRECT COPYRIGHT INFRINGEMENT;** <br><br> **2. CONTRIBUTORY COPYRIGHT INFRINGEMENT;** <br><br> **3. VICARIOUS COPYRIGHT INFRINGEMENT** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiffs Sony Music Entertainment; Sony Music Entertainment US Latin LLC; Arista Music; Arista Records, LLC; Ultra Records, LLC; Zomba Recording LLC; Records Label, LLC, and LaFace Records, LLC (collectively, "SME" or "Plaintiffs") for their Complaint against Designer Brands Inc., DSW Shoe Warehouse, Inc., Topo Athletic LLC, and Does 1 through 25 (collectively, "DSW" or "Defendants") allege, as follows:

**INTRODUCTION**

1.      SME brings this action to stop DSW's rampant infringement of SME's copyrighted sound recordings—including by some of the world's most popular recording artists—to advertise DSW's shoe businesses on DSW's social media accounts and through "influencers" whom DSW pays to promote DSW's products and stores.

2.      Defendant Designer Brands Inc. is a publicly traded company with vast resources.[1] It and its subsidiaries, including Defendants DSW Shoe Warehouse, Inc. and Topo Athletic LLC, are some of North America's largest designers, producers, and retailers of shoes and accessories.

3.      At the times DSW infringed SME's copyrights, DSW knew of the need to obtain permission from, and pay, SME to use SME's sound recordings in DSW's commercial advertising. DSW has decades of experience licensing music to promote its businesses and previously licensed sound recordings from SME for this very purpose.

4.      DSW also had significant marketing dollars available to pay SME its customary licensing fees. For example, on information and belief, in fiscal year 2023, DSW had a marketing budget of $175,000,000.

5.      Despite DSW's knowledge and resources, and despite lacking permission from SME, DSW used SME's sound recordings in its unauthorized advertisements because it needed that music to entice consumers to view DSW's social media posts. The use of recorded music has always been an important part of commercial

---

[1] DSW has a current market capitalization of approximately $135 million, annual net sales of over $3 billion, and annual gross profit of approximately $1.30 billion. *See*, *e.g. Designer Brands Inc.*, INVESTING.COM, https://www.investing.com/equities/dsw-inc (last visited Aug. 5, 2025) (market cap); *Designer Brands Inc. Reports Fourth Quarter and Fiscal Year 2024 Financial Results*, DESIGNER BRANDS INC. (Mar. 20, 2025), https://investors.designerbrands.com/2025-03-20-Designer-Brands-Inc-Reports-Fourth-Quarter-and-Fiscal-Year-2024-Financial-Results (sales and profits).

advertising—think Bob Seger's "Like a Rock" commercial for Chevrolet trucks; Marvin Gaye's "I Heard it Through the Grapevine" for Sun-Maid Raisins; and the Beatles "Revolution" for Nike. The use of music in advertising has become even more critical now, as marketing has shifted from traditional advertising to social media platforms. Music is an essential component of any successful social media video post, because popular music draws the attention of consumers to posts they otherwise would have not searched for or been aware of.

6.    DSW's infringement also extends to partnerships with so-called social media "influencers". Influencers are individuals with a strong social media following and credibility in specific areas (*e.g.*, fashion) who can drive social media engagement and impact the purchasing decisions of their followers. DSW's influencers—with DSW's guidance—post promotional advertisements for DSW's goods to their own social media accounts, and those advertisements also feature unauthorized SME recordings to enhance the advertisements' draw and appeal.

7.    SME does not yet know the full scope of DSW's infringement, but, at a minimum, DSW and its influencers have used 122 of SME's sound recordings in more than 170 unauthorized video promotions.

8.    DSW's conduct has caused and continues to cause substantial and irreparable harm to SME, while enriching DSW at SME's expense. By this lawsuit, SME seeks to stop the infringement, to obtain compensation for DSW's massive, willful, and deliberate campaign of copyright infringement, and to prevent further violations of those rights.

**JURISDICTION AND VENUE**

9.     This Court has original subject matter jurisdiction over SME's copyright infringement claims under 28 U.S.C. §§ 1331 and 1338(a).

10.     The Court has personal jurisdiction over each of the Defendants because the Defendants have purposefully directed their infringing activities at California, the California market, and California customers.

11.     DSW and its influencers used SME's sound recordings in unauthorized advertisements with the intent that such infringing advertisements would be streamed by as many consumers as possible in California. On information and belief, DSW and its influencers created and distributed infringing advertisements on social media platforms that were received by numerous consumers in California, resulting in rampant unauthorized reproduction, distribution, and/or public performance of SME's sounds recordings (as well as the creation of unauthorized derivative works) within California.

12.     On information and belief, DSW also directed, oversaw, contributed to and/or benefited from the unauthorized reproduction, distribution, and/or public performance of SME's sound recordings (as well as the creation of unauthorized derivative works) by DSW's influencers and other third parties in California in connection with the creation of infringing social media advertisements for DSW and the receipt of such advertisements by individuals in California.

13.     DSW and its influencers intentionally targeted California consumers by using SME's sound recordings in the infringing advertisements as an essential means of reaching, soliciting, and selling to these customers—including selling via retail locations in California. Indeed, DSW maintains more than 40 retails stores in California—more stores than in any other State within the United States. On information and belief, the infringing advertisements created by DSW and its influencers successfully attracted California customers, resulting in substantial sales of

DSW products, both online for delivery to California residents and in California retail locations.

14.    Moreover, as discussed more fully below, some of DSW's infringing advertisements specifically focused on events held in California, such as the Coachella Valley Music & Arts Festival, which has been held in Indio, California for more than twenty-five years. Similarly, some of the influencers DSW has partnered with—and, on information and belief, paid—to post infringing advertisements are based in California. DSW used California-based influencers and focused on California events to increase the impact on California consumers of DSW's infringing social media advertising and to promote sales within California.

15.    Additionally, until March 2025, DSW maintained in California (via a third party operator) a facility for processing, sorting, and shipping products—including, on information and belief, products DSW and its influencers marketed to consumers using advertisements that infringed SME's sounds recordings. On information and belief, products DSW and its influencers marketed with unauthorized advertisements that used SME sound recordings were shipped, with DSW's knowledge, from a facility in California.

16.    On information and belief, DSW and its influencers' unauthorized advertisements that used SME sound recordings were stored and transmitted through computer servers located in California, resulting in the reproduction of, and distribution and public performance through, SME sound recordings on such servers.

17.    Venue is proper in this district under 28 U.S.C. §§ 1391(b) and 1400(a). A substantial part of the acts of infringement occurred in this district, and this is a district in which DSW may be found.

## THE PARTIES

### A.    *Plaintiffs*

18.    Plaintiffs are affiliated record companies engaged in the business of producing, manufacturing, distributing, and/or licensing sound recordings.

**B.    *Defendants***

19.    Defendant Designer Brands, Inc. is a corporation with a principal place of business at 810 DSW Drive, Columbus, OH 43219.

20.    Defendant DSW Show Warehouse, Inc. is a corporation with, upon information and belief, a principal place of business in Ohio.

21.    Defendant Topo Athletic LLC is a limited liability corporation with a principal place of business at 810 DSW Drive, Columbus, OH 43219. On December 13, 2022, DSW acquired a 79.4% ownership interest in Topo Athletic LLC.

22.    On information and belief, Does 1 through 25 own, operate, and/or are affiliated with DSW, and/or are employees and/or influencers of DSW's, and/or are otherwise responsible for and caused and are causing the harm and damages alleged in this Complaint. SME is presently unaware of the true names and/or the involvement of the defendants sued by the fictitious designations Does 1 through 25, and for that reason sue them by those designations. SME will seek leave to amend this pleading to identify those defendants when their true names and involvement in the infringements at issue are known.

## THE COPYRIGHTED RECORDINGS

23.    Attached as Exhibit A is an illustrative, non-exhaustive list of SME sound recordings (the "SME Recordings") that DSW and its influencers have infringed. For each recording, the list identifies at least one URL where DSW and/or DSW's influencers posted the unauthorized advertisements featuring those recordings (the "Infringing Posts")[2] and the Plaintiff that owns or controls the copyright to the recording in the United States.

24.    The SME Recordings include hits, across multiple genres, recorded by some of the world's most popular recording artists, as listed on Exhibit A. Among the SME Recordings that Defendants wrongfully appropriated are the popular works

---

[2] DSW often posts the same Infringing Post to multiple social media accounts, and Exhibit A does not purport to identify each such infringing use of each Infringing Post.

"Crazy in Love", performed by Beyoncé (and Jay-Z); "Paint The Town Red", performed by Doja Cat; "Sweet Dreams (Are Made of This)", performed by the Eurythmics; "THATS WHAT I WANT", performed by Lil Nas X; and "All I Want for Christmas Is You", performed by Mariah Carey.

25.    Upon information and belief, there are additional instances of infringement by DSW and/or DSW's influencers that SME has not yet discovered. On information and belief, discovery will reveal numerous additional Infringing Posts that DSW and/or DSW's influencers have created and posted to social media accounts (including Infringing Posts that are no longer publicly available to view).

## DSW'S INFRINGING CONDUCT

### A.    *DSW's Social Media Advertising Strategy*

26.    For over a decade, social media has been a growing part of DSW's advertising strategy. In a 2012 article about DSW, one marketing commentator explained that "[w]hen it comes to using social media as a selling tool, Designer Shoe Warehouse gets it."[3]

27.    DSW operates numerous social media accounts, with hundreds of thousands of online followers; DSW's social media accounts have over 1 million followers across various platforms.

28.    DSW populates its social media accounts with music-driven content because music entices consumers to view social media posts.

29.    Platforms such as Instagram and TikTok, for example, are designed to engage users with short-form video content. Although short-form video advertising can be over a minute long, consumers will move on quickly if an ad doesn't grab their attention within seconds. Incorporating popular music into their short-form video ads

---

[3] Tim Parry, *DSW Builds Shoe-lover Community with Social Media*, MULTICHANNEL MERCHANT (AUG. 16, 2012), https://multichannelmerchant.com/marketing/dsw-builds-shoe-lover-community-with-social-media/.

is one way brands like DSW can "hook" potential consumers and ensure that they engage with the ad.

30.    Moreover, social media platforms use algorithms which often promote videos based on their audio content; the algorithms favor videos that include music which a user has liked previously or is generally popular on the app.

31.    By TikTok's own account, "67% of TikTok users would prefer to see videos from brands featuring popular or trending songs on TikTok." As a result, TikTok advises brands that "[u]sing trending songs in your brands' TikTok content is a great way to capture [users'] attention."[4] Indeed, a TikTok commissioned study concluded that "[f]or brands to resonate on TikTok, they need to build holistically with audio as a primary creative driver."[5]

32.    DSW features SME Recordings in DSW's social media advertisements to enhance the entertainment value, emotional impact, and effectiveness of the ads. Using SME Recordings in the Infringing Posts causes the posts to appear in the social media feeds of users who are interested in the featured music (not DSW, in particular, or even shoes or accessories, in general) and might not otherwise come across DSW's traditional advertising campaigns. Using SME Recordings also helps users discover the Infringing Posts when they are searching social media for content incorporating certain songs or music-related tags.

33.    The Infringing Posts incorporate significant, recognizable portions of the SME Recordings—usually the "heart" of the recording.

34.    Most of the Infringing Posts contain music from start to finish.

---

[4] *New studies quantify TikTok's growing impact on culture and music*, TIKTOK (July 21, 2021), https://newsroom.tiktok.com/en-us/new-studies-quantify-tiktoks-growing-impact-on-culture-and-music.

[5] *Kantar report: How brands are making noise and driving impact with sound on TikTok*, TIKTOK: TIKTOK FOR BUSINESS (June 8, 2021), https://www.tiktok.com/business/en-US/blog/kantar-report-how-brands-are-making-noise-and-driving-impact-with-sound-on-tiktok.

35.    DSW recognizes the importance of using music in DSW advertisements. DSW described a recent marketing campaign as "com[ing] to life through memorable, music-themed experience" as well as a "themed playlist," and creating an "emotional brand connection & content generation."[6]

36.    In addition to their own social media accounts, DSW partners with social media influencers to expand DSW's social media presence and enlarge DSW's marketing reach.

37.    As DSW has explained, DSW uses "brand ambassadors, celebrity, VIP [and] influencer[s]" in its campaigns.[7]

38.    Designer Brands Inc.'s website has an "Influencer and Marketing Partnerships" page explaining that it "partners with select influencers" and soliciting "quer[ies] and media kit[s] . . . for consideration."[8]

39.    One case study of DSW's marketing explains:

Engaging influencers and brand ambassadors is essential to DSW's marketing approach. Influencers from fitness and lifestyle sectors often showcase DSW's products, helping to establish trust and authenticity among potential customers. By selecting ambassadors who align with their brand values, DSW can effectively reach targeted demographics. Ambassadors share personalized experiences with exclusive product lines or seasonal collections, generating buzz and driving traffic. Additionally, social media gives influencers a platform to connect with their followers, creating organic promotion that resonates more profoundly than traditional advertising. Through these relationships, DSW cultivates a

---

[6] *Investor Day Presentation* at 44, DESIGNER BRANDS INC. (Apr. 8, 2022), https://filecache.investorroom.com/ir1_dswinc/612/DBI_Investor%20Deck%20-%20Final.pdf.

[7] *Id.*; *see also* Chris Kelly, *How DSW's CMO is overhauling the brand for a new age of retail*, MARKETING DIVE (Feb. 28, 2025), https://www.marketingdive.com/news/dsw-cmo-brand-overhaul-phygital-retail/741028/.

[8] *Influencers and Marketing Partners*, DESIGNER BRANDS INC., https://www.dswinc.com/news/marketing-partnerships/ (last visited Aug. 5, 2025).

community of customers who feel a connection to the brand, fostering loyalty and repeated business.[9]

40.     On information and belief, in exchange for creating and distributing promotional advertisements featuring DSW products, DSW compensates its social media influencers in various ways, including via direct payments, commissions, rebates, and free products and experiences (including free travel/organized trips and concert tickets). DSW and its influencers also receive cross-collaborative exposure by which both parties gain influence in the social media marketplace. On information and belief, DSW contracts with many leading social media influencers, either directly or through agencies, including the influencers who posted the Infringing Posts.

41.     In a prior license agreement with SME for a social media campaign, DSW referred to its influencers as "Paid Creators." In that license agreement, in addition to obtaining the right to use a SME sound recording in a DSW advertisement, DSW obtained the right for up to 10 of its Paid Creators to create advertisements using the same recording, for a five-figure fee per Paid Creator advertisement.

42.     On information and belief, DSW requires its influencers to post promotional advertisements featuring DSW products on the influencers' social media accounts for DSW to repost on DSW's social media accounts.

43.     On information and belief, DSW has an in-house social media team that works with DSW's influencers and/or advertising agencies on the influencer's Infringing Posts.[10]

---

[9] Nina Sheridan, *DSW Marketing Strategy 2025: A Case Study*, LATTERLY.ORG, https://www.latterly.org/dsw-marketing-strategy/ (last visited Aug. 5, 2025).

[10] *See* Chris Kelly, *How DSW's CMO is overhauling the brand for a new age of retail*, MARKETING DIVE (Feb. 28, 2025), https://www.marketingdive.com/news/dsw-cmo-brand-overhaul-phygital-retail/741028/ ("To support [DSW's] marketing, [Chief Marketing Officer Sarah] Crockett is combining internal and external teams, including Stagwell agency Crispin, which was named agency of record for DSW in November 2024.").

44.     On information and belief, some of DSW's influencers do not disclose that the advertisements they post are paid sponsorships or endorsements, contrary to Federal Trade Commission guidelines.

**B.**    ***The Infringing Posts***

45.     Although DSW is an experienced licensee of music for advertising use, DSW and/or its influencers created and posted more than 170 Infringing Posts (identified to date), incorporating about 122 SME Recordings (identified to date) without seeking permission from SME or compensating SME for their use of SME's works.

46.     The Infringing Posts rely on the SME Recordings to enhance their reach by including popular music that draws attention to the advertisements, using captions or hashtags that connect to music, and/or connecting DSW products to music-related themes.

47.     As shown in Figures 1 and 2 below, an advertisement DSW posted to DSW's TikTok account on August 22, 2023, exploits the SME Recording "Church Girl", performed by Beyoncé. The post shows a woman getting ready to attend the superstar's concert and explicitly connects the advertised DSW product (boots) to music (the Beyoncé concert) with its caption: "Legendary concerts require legendary boots. @noordinarynoire #crownvintage  #boots  #mydsw."[11]

---

[11] DSW (@DSW), TɪᴋTᴏᴋ (Aug. 22, 2023), https://www.tiktok.com/@dsw/video/7270167473394175278.

*Figures 1 & 2*



48.     As shown in Figures 3 and 4 below, an advertisement DSW posted to DSW's TikTok account on July 4, 2024, exploits the SME Recording "Shower", performed by Becky G. The post explicitly references the recording's well-known lyrics "You light me up inside like the Fourth of July" with the caption: "Shop our semi-annual sale and light up like the 4th of July."[12]

---

[12] DSW (@DSW), Tɪᴋᴛᴏᴋ (July 4, 2024),
https://www.tiktok.com/@dsw/photo/7387766720976391470.

*Figures 3 & 4*





49.     As shown in Figure 5 and 6 below, an advertisement DSW posted to DSW's TikTok account on September 14, 2023 exploits the SME Recording "Crazy in Love", performed by Beyoncé (and Jay-Z). The post explicitly connects to another SME recording performed by Beyoncé ("Formation") and to a Beyoncé concert with the caption and hashtags: "Get in formation, we came to slay (and did). @emma.arletta #tour  #concert  #mydsw."[13]

---

[13] DSW (@DSW), Tɪᴋ Tᴏᴋ (Sept. 14, 2023), https://www.tiktok.com/@dsw/video/7278703629727485230.

*Figure 5 & 6*



 **dsw** ✔

DSW · 9-14            **Follow**

Get in formation, we came to slay (and did). @emma.arletta #tour #concert #mydsw

♫ original sound - DSW

50.    As shown in Figures 7 and 8 below, an advertisement DSW posted to DSW's TikTok account on October 2, 2023 exploits the SME Recording "Paint the Town Red" by Doja Cat. The post explicitly connects the recording's title and lyrics to a pair of red shoes by Steve Madden with footage of the shoes and the caption: "Walk on by and paint the town red 💋 #stevemadden  #unboxing  #MyDSW".[14]

_____

[14] DSW (@DSW), TɪᴋTᴏᴋ (Oct. 2, 2023),
https://www.tiktok.com/@dsw/video/7285392159618993454.

COMPLAINT                    14                    CASE NO. 2:25-cv-07285

*Figures 7 & 8*





51.    As shown in Figures 9 and 10 below, an advertisement DSW posted to DSW's TikTok account on April 25, 2022 exploits the SME Recording "Pose", performed by Yo Gotti (and others). The post explicitly connects to music (the Coachella Valley Music & Arts Festival) with the caption: "Highlights from #Coachella ✌️ Which 'fit is your fave? #festivalstyle #spring #dsw #fyp #outfitinspo". Moreover, the video directly connects to the lyrics embodied in the

recording by depicting festival attendees striking a pose each time the word "pose" is sung by the recording artist.[15]

*Figures 9 & 10*





52.    DSW repeatedly posted advertisements exploiting the SME Recording "All I Want For Christmas Is You" by Mariah Carey—one of SME's most popular

---

[15] DSW (@DSW), TIKTOK (Apr. 25, 2022), https://www.tiktok.com/@dsw/video/7090597203328240939.

recordings—in November and December, when the recording is most in-demand.[16] DSW posted advertisements featuring this recording on November 23, 2022, December 7, 2022, November 3, 2023, November 17, 2023, and November 20, 2023.

53.    DSW's use of the SME Recordings in the Infringing Posts is a standard commercial use and precisely how music is typically used in the context of commercial advertisements. SME and other record companies regularly license the use of their recordings to third parties for just such commercial uses, including for "one-off" use in advertisements that are distributed and publicly performed on social media platforms. Companies, including retail companies like DSW, have paid substantial sums to use SME's popular sound recordings in this way. Nevertheless, despite the central role of music in the Infringing Posts, DSW has not paid SME for the right to use the SME Recordings in those advertisements.

**C.    *DSW Knew It Needed to Obtain Licenses from SME to Use the SME Recordings***

54.    At the time DSW made, distributed, and transmitted the Infringing Posts, DSW was aware of the requirements of the United States Copyright Act and the need to obtain licenses from SME to use the SME Recordings. For example, DSW has obtained licenses from SME in the past to exploit SME's sound recordings, including in social media posts. On information and belief, DSW has previously sought and obtained licenses from other sound recording and musical composition owners to do the same.

55.    Additionally, the social media platforms on which DSW posted the Infringing Posts expressly provide that users may not infringe copyrights in sound recordings on their platform, particularly in connection with commercial activities.

---

[16] *See*, *e.g.*, Gary Trust, *Mariah Carey's 'All I Want for Christmas Is You' Scores 14th Week at No. 1 on Billboard Hot 100*, BILLBOARD (Dec. 26, 2023), https://www.billboard.com/music/chart-beat/mariah-carey-all-i-want-for-christmas-is-you-number-onehot-100-14-weeks-1235565006/ (noting that the track "ruled the [Billboard] Hot 100 over five holiday seasons" as of 2023).

56.     For example, TikTok's Terms of Service, to which a user must assent and agree to post videos to TikTok, makes clear that "Our Services are provided for private, non-commercial use."[17]

57.     Further, the TikTok Terms of Service state:

> NO RIGHTS ARE LICENSED WITH RESPECT TO SOUND RECORDINGS  . . . THAT ARE MADE AVAILABLE FROM OR THROUGH THE SERVICE.[18]

58.     TikTok also provides business users with an audio library of pre-cleared music for commercial content and ad creation (called the "Commercial Music Library"), but the SME Recordings are not part of that library and DSW could not have obtained any of them from that library.

59.     Moreover, since approximately August 2020, before business account users like DSW can post a video to their TikTok account, they must confirm that either (A) they own all of the rights to the music included in this video; or (B) the music is in the public domain; or (C) they have permission from all necessary rights holders to use the music on the TikTok platform. If they cannot confirm (A) or (B) or (C), any music included in the video will be muted.

60.     Figure 11 below is a screenshot depicting an example of TikTok's in-app notifications regarding the use of copyrighted music:

---

[17] *Terms of Service*, TɪᴋTᴏᴋ (last updated Nov. 2023), https://www.tiktok.com/legal/terms-of-service?lang=en (Paragraph 1. "Your Relationship With Us").

[18] *Id.* (Paragraph 7. "Content, TikTok Content").

1

*Figure 11*



61.     While the specific language has changed over time, TikTok has had this same basic policy since August 2020. Nonetheless, DSW posted all the Infringing Posts to TikTok *after* August 2020, apparently by falsely representing either that the Infringing Posts contained no copyrighted sound recordings or that DSW had obtained all necessary rights and permissions to use the SME Recordings in the Infringing Posts, or by fraudulently representing itself as a non-business account in order to post content featuring the SME Recordings.

62.    Likewise, since at least as early as April 2018, the Music Guidelines referenced in Instagram's Terms of Use[19] have prohibited the commercial use of music without an appropriate license. The Music Guidelines state in pertinent part: "Use of music for commercial or non-personal purposes in particular is prohibited unless you have obtained appropriate licenses."[20] Nonetheless, DSW and its influencers posted each of the Infringing Posts to Instagram *after* April 2018, in disregard for the platform's Terms of Use.

63.    On information and belief, DSW was notified by one or more platforms or other third parties that DSW and its influencers had posted advertisements on social media which used copyrighted sound recordings without permission and thus infringed those copyrights. For example, Figure 12 below shows a copy of a video on the TikTok platform that DSW created and posted, with a notice from TikTok stating that the music that was originally posted with the video "isn't available."[21] On information and belief, TikTok removed the music due to copyright infringement, giving notice to DSW of its infringing use.

---

[19]    *Terms of Use*, INSTAGRAM, https://help.instagram.com/581066165581870 (Paragraph 4.2 "How You Can't Use Instagram") (last visited Aug. 5, 2025).

[20] Instagram's Terms of Use incorporate and link to the Music Guidelines found on Facebook's website. *Music Guidelines*, FACEBOOK (last updated March 26, 2024), https://www.facebook.com/legal/music_guidelines.

[21] DSW (@DSW), TIKTOK (Oct. 18, 2020) (note that this video has since been removed from DSW's TikTok page).

*Figure 12*



64.    Upon information and belief, DSW delayed in removing the Infringing Posts until well after it had received notice of its infringing activity from other copyright owners. Moreover, DSW nevertheless continued to post certain Infringing Posts incorporating SME Recordings after receiving such notice.

65.    Indeed, as shown in Figure 13 below, as recently as June 14, 2025, one of DSW's influencers posted to her Instagram account an advertisement which exploits, without permission, the SME Recording "Haunted", performed by Beyoncé. [22]  The post tags DSW's own Instagram account, and includes the hashtags #mydsw and #dswpartner, as well as the name of the shoe brand—Sperry—advertised in the post.

---

[22] Lauren Wolfe (@laurenwolfe), INSTAGRAM (June 14, 2025), https://www.instagram.com/reel/DK4tVnSuNSg/.

The post does not, however, disclose that it is paid advertising, for example by including a #ad disclosure.

66. As shown in Figure 14 below, DSW used its own Instagram account to comment "Sperry girl summer?!" on the post.

*Figure 13*



*Figure 14*



67. On information and belief, the owner of the @laurenwolfe Instagram account was paid by DSW, or received non-monetary compensation from DSW, in exchange for posting the video described in paragraphs 65 through 66 above.

## FIRST CAUSE OF ACTION:  DIRECT COPYRIGHT INFRINGEMENT

68.    SME incorporates the allegations set forth in paragraphs 1–67 as if set forth here in full.

69.    SME owned or controlled each of the copyrights to each of the SME Recordings during the relevant times of DSW's infringement. SME has complied in all respects with the provisions of the Copyright Act of 1976 regarding the SME Recordings, and each such work is covered by a valid copyright registration, or either is not a United States work, as that phrase is defined in the Copyright Act, or is a sound recording fixed before February 15, 1972, and included on a schedule filed with the Copyright Office pursuant to the Orrin G. Hatch-Bob Goodlatte Music Modernization Act ("MMA").

70.    DSW has, without authorization, reproduced, distributed, made available, created derivative works from, and publicly performed via digital transmission the SME Recordings via DSW's social media accounts.

71.    An illustrative, non-exhaustive list of the unique uses of the SME Recordings used in the Infringing Posts—both those posted by DSW and those posted by DSW's influencers—is attached as Exhibit A (with multiple entries for the same sound recording indicating DSW's inclusion of that sound recording in multiple unique Infringing Posts). SME's investigation continues, and discovery is likely to reveal additional infringements. In particular, DSW maintains social media accounts and has posted Infringing Posts on platforms—such as Instagram—on which the advertisements are publicly available only for limited periods. As such, the *full* scope of DSW's infringement is known only to DSW. SME intends to seek leave to amend this Complaint at an appropriate time to provide an expanded list of Infringing Posts and infringed SME Recordings.

72.    By incorporating SME Recordings into the Infringing Posts, and then making those Infringing Posts available to the public, including by distributing and

transmitting them, DSW and its employees are infringing SME's exclusive rights to reproduce, prepare derivative works based upon, distribute, and publicly perform (by digital transmission) the SME Recordings. This infringement includes, but is not limited to: (a) reproducing the SME Recordings and adapting those works to create new, unauthorized derivative works (*i.e.*, the Infringing Posts); (b) uploading the Infringing Posts to, on information and belief, DSW's own computer servers and the computer servers of third-party hosting services and reproducing and reposting Infringing Posts; and (c) distributing and transmitting the Infringing Posts to consumers via DSW's social media accounts.

73.    Defendants' conduct constitutes copyright infringement under 17 U.S.C. § 101, *et seq.*, and willful copyright infringement under 17 U.S.C. § 504(c)(2).

74.    As a direct and proximate result of DSW's infringement and willful infringement of SME's copyrights, SME is entitled to statutory damages under 17 U.S.C. § 504(c), in an amount of up to $150,000 with respect to each work infringed, or such other amount as may be proper under 17 U.S.C. § 504(c). Alternatively, at SME's election, pursuant to 17 U.S.C. § 504(b), SME shall be entitled to its actual damages and DSW's profits attributable to the infringement, as will be proven at trial.

75.    DSW's conduct is causing, and, unless enjoined by this Court, will continue to cause SME great and irreparable injury that cannot be fully compensated or measured in money. SME has no adequate remedy at law. Pursuant to 17 U.S.C. § 502, SME is entitled to a permanent injunction prohibiting the infringement of its exclusive rights under copyright.

76.    SME is further entitled to its attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

**SECOND CAUSE OF ACTION: CONTRIBUTORY INFRINGEMENT**

77.    SME incorporates the allegations set forth in paragraphs 1–67 as if set forth here in full.

78.    The third-party social media influencers who created and distributed the Infringing Posts on their own social media accounts have likewise infringed the copyrights in the SME Recordings. Additionally, any third-party advertising agencies that created any Infringing Posts for use by DSW or DSW's influencers have themselves infringed the copyrights in the SME Recordings. DSW is liable for contributory copyright infringement for the infringing acts of these influencers and agencies.

79.    DSW materially contributed to such infringement by promoting and/or assisting with the influencers' and agencies' creation of Infringing Posts. DSW has actual or constructive knowledge of such infringement, including actual or constructive knowledge that SME did not grant rights to include SME Recordings in the Infringing Posts. Additionally, DSW induced such infringement, including by promoting such infringement through the assistance and compensation given to social media influencers and agencies, and through posting and reposting of the Infringing Posts.

80.    Separately, to the extent the users of social media platforms or the platforms are directly liable for the infringement caused by the Infringing Posts from DSW's own social media accounts, DSW is liable as a contributory copyright infringer for making the Infringing Posts available to both the platforms and users and subscribers of the platforms and/or by causing the Infringing Posts to be copied, made available, and transmitted over the platforms.

81.    DSW's acts of contributory infringement are knowing, deliberate, and willful, and in utter disregard for SME's rights.

82.    As a direct and proximate result of DSW's contributory infringement of SME's copyrights, SME is entitled to statutory damages under 17 U.S.C. § 504(c), in an amount of up to $150,000 with respect to each work infringed, or such other amount as may be proper under 17 U.S.C. § 504(c). Alternatively, at SME's election, pursuant to 17 U.S.C. § 504(b), SME shall be entitled to its actual damages and DSW's profits attributable to the infringement, as will be proven at trial.

83.    DSW's conduct is causing, and, unless enjoined by this Court, will continue to cause SME great and irreparable injury that cannot be fully compensated or measured in money. SME has no adequate remedy at law. Pursuant to 17 U.S.C. § 502, SME is entitled to a permanent injunction prohibiting the infringement of its exclusive rights under copyright.

84.    SME is further entitled to its attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

**THIRD CAUSE OF ACTION: VICARIOUS INFRINGEMENT**

85.    SME incorporates the allegations set forth in paragraphs 1–67 as if set forth here in full.

86.    Third-party social media influencers who created and distributed the Infringing Posts on their own social media accounts have likewise infringed the copyrights in the SME Recordings. Additionally, any third-party advertising agencies that created any Infringing Posts for use by DSW or DSW's influencers have themselves infringed SME's copyrights. DSW is vicariously liable for the infringing acts of these influencers and agencies.

87.    DSW has, and/or has exercised, the right, ability, and authority to control and supervise the influencers' and agencies' Infringing Posts, including the placement and removal of the Infringing Posts on the influencers' and DSW's own social media accounts.

88.    Separately, to the extent the users of social media platforms or the platforms themselves are directly liable for the infringement caused by the Infringing Posts on DSW's own social media accounts, DSW is also vicariously liable for that infringement.

89.    DSW has, and has exercised, the right and ability to control and supervise the placement and removal of the Infringing Posts on DSW's own social media accounts.

90.    DSW also receives a direct financial benefit from the use of the SME Recordings in the Infringing Posts, including but not limited to the SME Recordings listed in Exhibit A. Among other things, DSW benefits from the exploitation of the SME Recordings in the Infringing Posts by saving the costs of licensing these works for a paid advertising campaign and by increased brand recognition and product sales.

91.    DSW's acts of vicarious infringement are knowing, deliberate, and willful, and in utter disregard for SME's rights.

92.    As a direct and proximate result of DSW's vicarious infringement of SME's copyrights, SME is entitled to statutory damages under 17 U.S.C. § 504(c), in an amount of up to $150,000 with respect to each work infringed, or such other amount as may be proper under 17 U.S.C. § 504(c). Alternatively, at SME's election, pursuant to 17 U.S.C. § 504(b), SME shall be entitled to its actual damages and DSW's profits attributable to the infringement, as will be proven at trial.

93.    DSW's conduct is causing, and, unless enjoined by this Court, will continue to cause SME great and irreparable injury that cannot be fully compensated or measured in money. SME has no adequate remedy at law. Pursuant to 17 U.S.C. § 502, SME is entitled to a permanent injunction prohibiting the infringement of their exclusive rights under copyright.

94.    SME is further entitled to its attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

### PRAYER FOR RELIEF

WHEREFORE, SME prays for judgment from this Court in its favor against DSW:

a.    Declarations that DSW has infringed and willfully infringed the SME Recordings in violation of the Copyright Act.

b.    A permanent injunction requiring DSW and DSW's agents, employees, officers, attorneys, successors, licensees, partners and assignees, and all persons acting in concert with any one of them, to cease directly and indirectly infringing, and

causing, enabling, facilitating, encouraging, promoting, inducing, and/or participating in the infringement of, any of SME's rights protected by the Copyright Act.

c. For statutory damages pursuant to 17 U.S.C. § 504(c), in an amount of up to $150,000 with respect to each work infringed, or such other amount as may be proper under 17 U.S.C. § 504(c), or, in the alternative, at SME's election, SME's actual damages and DSW's profits attributable to the infringement pursuant to 17 U.S.C. § 504(b), in an amount to be proven at trial;

d. For an award of SME's costs in this action, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505;

e. For pre-judgment and post-judgment interest at the applicable rate on any monetary award made part of the judgment against DSW; and

f. For such other and further relief as the Court deems proper.

Dated: New York, New York
     August 6, 2025

SHAPIRO ARATO BACH LLP

By: /s/ Cynthia S. Arato
    Cynthia S. Arato (SBN 156856)
    Avery D. Medjuck (*pro hac vice* forthcoming) (NY 5738182)
    1140 Avenue of the Americas, 17th Fl.
    New York, NY 10036
    Telephone: (212) 257-4880
    carato@shapiroarato.com
    amedjuck@shapiroarato.com

*Attorneys for Plaintiffs*

## **DEMAND FOR JURY TRIAL**

Pursuant to Local Rule 38-1 Federal Rule of Civil Procedure 38, SME demands a trial by jury of all issues that are so triable.

Dated: New York, New York

August 6, 2025

By:/s/ Cynthia S. Arato
Cynthia S. Arato
*Attorneys for Plaintiffs*