1  CYNTHIA S. ARATO (SBN 156856)
   carato@shapiroarato.com
2  FABIEN M. THAYAMBALLI (SBN 284752)
   fthayamballi@shapiroarato.com
3  AVERY D. MEDJUCK (*pro hac vice*)
   amedjuck@shapiroarato.com
4  SHAPIRO ARATO BACH LLP
   1140 Avenue of the Americas, 17th Fl.
5  New York, New York 10036
   Telephone: (212) 257-4880
6
7  Attorneys for Plaintiffs

8           UNITED STATES DISTRICT COURT

9           CENTRAL DISTRICT OF CALIFORNIA

10

11  SONY MUSIC ENTERTAINMENT,
    SONY MUSIC ENTERTAINMENT US          Case No. 2:25-cv-07285-JC
12  LATIN LLC, ARISTA MUSIC,
    ARISTA RECORDS, LLC, ULTRA
13  RECORDS, LLC,  ZOMBA               **MEMORANDUM OF POINTS AND**
    RECORDING, LLC, RECORDS            **AUTHORITIES IN OPPOSITION**
14  LABEL, LLC, and LaFACE RECORDS,    **TO DEFENDANTS' MOTION TO**
    LLC,                               **DISMISS OR TRANSFER**
15
         *Plaintiffs*,                 Judge: Hon. Jacqueline Chooljian
16                                     Hearing Date: November 18, 2025
         v.                            Hearing Time: 9:30 a.m.
17                                     Courtroom: 750
    DESIGNER BRANDS INC., DSW
18  SHOE WAREHOUSE, INC. TOPO
    ATHLETIC, LLC, and DOES 1-25,
19
         *Defendants*.
20

21

22

23

24

25

26

27

28

OPP. TO MOT. TO DISMISS                              Case No. 2:25-cv-07285-JC

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...........................................................................ii

PRELIMINARY STATEMENT ......................................................................1

FACTUAL BACKGROUND ...........................................................................2

ARGUMENT ...................................................................................................6

I.    This Action Has Priority Over The Ohio Action .................................6

II.   The Court Has Personal Jurisdiction Over All Defendants ..............11

    A.    The Court Has Jurisdiction Over DSW.....................................12

    B.    The Court Has Jurisdiction Over Topo.....................................20

    C.    The Court Has Jurisdiction Over DBI.......................................21

    D.    At A Minimum, The Court Should Grant Jurisdictional
        Discovery Or Leave To Amend ................................................22

III.  Venue Is Proper .................................................................................23

IV.   There Is No Basis To Transfer This Action ......................................24

CONCLUSION ..............................................................................................25

# TABLE OF AUTHORITIES

**Cases**                                                                      **Page(s)**

*A&M Recs., Inc. v. Napster, Inc.,*
  239 F.3d 1004 (9th Cir. 2001).................................................................14

*Alltrade, Inc. v. Uniweld Prods., Inc.,*
  946 F.2d 622 (9th Cir. 1991)..............................................................7, 24

*Am. Broad. Companies, Inc. v. Aereo, Inc.,*
  573 U.S. 431 (2014) .............................................................................13

*Anrig v. Ringsby United,*
  603 F.2d 1319 (9th Cir. 1978).............................................................24

*Ayla, LLC v. Alya Skin Pty. Ltd.,*
  11 F.4th 972 (9th Cir. 2021)................................................................15

*Baton v. Ledger SAS,*
  No. 21-17036, 2022 WL 17352192 (9th Cir. Dec. 1, 2022)....................23

*Brighton Collectibles, Inc. v. Coldwater Creek, Inc.,*
  No. 06-cv-1848, 2006 WL 4117032 (S.D. Cal. Nov. 21, 2006)........7, 8, 25

*Briskin v. Shopify, Inc.,*
  135 F.4th 739 (9th Cir. 2025) .............................................16, 17, 18, 20

*Carolina Cas. Ins. Co. v. Team Equip., Inc.,*
  741 F.3d 1082 (9th Cir. 2014).............................................................23

*CollegeSource, Inc. v. AcademyOne, Inc.,*
  653 F.3d 1066 (9th Cir. 2011).............................................................19

*Decker Coal Co. v. Commonwealth Edison Co.,*
  805 F.2d 834 (9th Cir. 1986)...............................................................25

*Desire, LLC v. Manna Textiles, Inc.,*
  986 F.3d 1253 (9th Cir. 2021).............................................................11

*Doe v. WebGroup Czech Republic, a.s.,*
  93 F.4th 442 (9th Cir. 2024)................................................................18

*Freestream Aircraft (Bermuda) Ltd. v. Aero L. Grp.,*
  905 F.3d 597 (9th Cir. 2018)..........................................................13, 15

*Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*,
   972 F.3d 1101 (9th Cir. 2020) ..................................................................... 19

*Gov't Emps. Ins. Co. v. Dizol*,
   133 F.3d 1220 (9th Cir. 1998) ........................................................................ 7

*Gribin v. Hammer Galleries*,
   793 F. Supp. 233 (C.D. Cal. 1992) ................................................................. 7

*Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*,
   328 F.3d 1122 (9th Cir. 2003) ...................................................................... 23

*Herbal Brands, Inc. v. Photoplaza, Inc.*,
   72 F.4th 1085 (9th Cir. 2023) ................................................................. 12, 13

*HiTherm, LLC v. Victaulic Co.*,
   No. 22-cv-924, 2022 WL 19239750 (C.D. Cal. July 7, 2022) ....................... 9

*Hunley v. Instagram, LLC*,
   73 F.4th 1060 (9th Cir. 2023) ........................................................................ 3

*In re Bozic*,
   888 F.3d 1048 (9th Cir. 2018) ...................................................................... 25

*In re Hall, Bayoutree Assocs., Ltd.*,
   939 F.2d 802 (9th Cir. 1991) ........................................................................ 24

*Laub v. U.S. Dep't of Interior*,
   342 F.3d 1080 (9th Cir. 2003) ...................................................................... 23

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
   647 F.3d 1218 (9th Cir. 2011) ...............................................................*passim*

*McCollum v. Opulous*,
   No. 22-cv-527, 2022 WL 17218072 (C.D. Cal. Aug. 3, 2022) .................... 18

*Medtronic Corevalve LLC v. Edwards Lifesciences Corp.*,
   No. 11-cv-961, 2012 WL 12888673 (C.D. Cal. Jan. 9, 2012) ................. 24, 25

*Mg Premium Ltd. v. Hoi*,
   No. 23-cv-349, 2023 WL 8895698 (C.D. Cal. Nov. 6, 2023) ..................... 18

*Morgan Drexen, Inc. v. Consumer Fin. Prot. Bureau*,
   785 F.3d 684 (D.C. Cir. 2015) ....................................................................... 8

*Pacesetter Sys., Inc. v. Medtronic, Inc.*,
  678 F.2d 93 (9th Cir. 1982)............................................................24

*Rode Microphones, LLC v. FEAM GMBH*,
  No. 23-cv-1082, 2023 WL 4873632 (C.D. Cal. July 31, 2023) ................................24

*S&N Enters., Inc. of Virginia v. WowWee USA, Inc.*,
  No. 18-cv-2255, 2018 WL 6266569 (S.D. Cal. Nov. 30, 2018)..........................7, 8

*Shell Oil Co. v. Frusetta*,
  290 F.2d 689 (9th Cir. 1961)............................................................7

*Sonos, Inc. v. Lenbrook Indus. Ltd. & Lenbrook Am. Corp.*,
  No. 19-cv-5411, 2020 WL 5032924 (C.D. Cal. Jan. 27, 2020)..........................11

*Spanski Enters., Inc. v. Telewizja Polska, S.A.*,
  883 F.3d 904 (D.C. Cir. 2018) ....................................................14, 18

*Twentieth Century Fox Int'l Corp. v. Scriba*,
  385 F. App'x 651 (9th Cir. 2010) ......................................................23

*Veoh Networks, Inc. v. UMG Recordings, Inc.*,
  522 F. Supp. 2d 1265 (S.D. Cal. 2007)....................................................8

*Warner Bros. Home Entm't v. Shi*,
  No. 12-cv-7753, 2013 WL 12116586 (C.D. Cal. Jan. 29, 2013)..........................11

*Washington Shoe Co. v. A-Z Sporting Goods Inc.*,
  704 F.3d 668 (9th Cir. 2012)............................................................19

*Will Co. v. Lee*,
  47 F.4th 917 (9th Cir. 2022)........................................................18, 19

*Williams v. Gaye*,
  895 F.3d 1106 (9th Cir. 2018)......................................................10, 11

*Xoxide, Inc. v. Ford Motor Co.*,
  448 F. Supp. 2d 1188 (C.D. Cal. 2006) ..............................................7, 8

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*,
  433 F.3d 1199 (9th Cir. 2006)..........................................................18

*Z-Line Designs, Inc. v. Bell'O Int'l, LLC*,
  218 F.R.D. 663 (N.D. Cal. 2003).........................................................7

**Statutes and Rules**

17 U.S.C. § 102 ................................................................................. 10

17 U.S.C. § 114 ................................................................................. 10

17 U.S.C. § 115 ................................................................................. 10

17 U.S.C. § 504 ........................................................................... 11, 19

28 U.S.C. § 1404 ............................................................................... 24

Fed. R. Civ. P. 4 ............................................................................... 18

**Other Authority**

Melville B. Nimmer & David Nimmer,
   5 *Nimmer on Copyright* § 14.04 (2025) ....................................... 11

Charles Alan Wright & Arthur R. Miller,
   14D *Fed. Prac. & Proc. Juris.* § 3807 (4th ed.) ........................... 24

Plaintiffs Sony Music Entertainment, Sony Music Entertainment US Latin LLC, Arista Music, Arista Records, LLC, Ultra Records, LLC, Zomba Recording, LLC, Records Label, LLC, and LaFace Records, LLC (together, "SME") respectfully submit this Memorandum of Points and Authorities in opposition to Defendants' Motion to Dismiss or Transfer.

## PRELIMINARY STATEMENT

The Court should deny Defendants' motion to dismiss or transfer this action because SME has stated viable, compelling claims against Defendants Designer Brands, Inc. ("DBI"), DSW Shoe Warehouse, Inc. ("DSW"), and Topo Athletic, LLC ("Topo") for Defendants' rampant infringement of SME's copyrighted sound recordings to advertise their shoe and apparel businesses and has done so in the appropriate forum.

This dispute concerns Defendants' commercial use of SME's valuable copyrighted sound recordings in Defendants' social media advertisements, without obtaining licenses from SME or paying SME its customary fees. Throughout their infringements, Defendants knew or recklessly disregarded the need to obtain licenses directly from SME to use sound recordings featuring some of the most popular artists in the world in their social media advertisements. Despite that knowledge, Defendants pilfered SME's sound recordings on a massive scale to entice consumers to view their social media posts, without paying the customary price.

The Court should not dismiss this case in favor of Defendants' "first filed" declaratory judgment action in the Southern District of Ohio because that action is a textbook example of an improper anticipatory filing, which the Court should not condone. SME first contacted Defendants in May 2025, seeking to amicably resolve this dispute out of court, and Defendants professed to share SME's settlement goal. However, while the parties were discussing settlement mechanics, Defendants were secretly drafting a complaint, which they filed in Ohio just hours after the parties' discussions stalled and SME told Defendants that SME "plans to move ahead with

1    preparing a complaint." In these circumstances, it is well established that SME's

2    infringement action should proceed over Defendants' anticipatory filing. SME has

3    moved to dismiss the Ohio action on this ground, and this Court should similarly reject

4    Defendants' improper attempt at forum-shopping.

5        The Court also has personal jurisdiction over each Defendant, and venue is

6    appropriate here, given the significant ties that both SME's claims and Defendants

7    have to this forum. Defendants' social media campaign resulted in infringements that

8    occurred within California. Defendants used California-based influencers to carry out

9    their infringing social-media campaign, and certain of Defendants' infringing ads

10    centered around California-based events, such as the Coachella music festival.

11    Defendants also exploited the lucrative California market for their products, including

12    by driving sales to their California retail stores and shipping goods from their

13    California warehouse. Under Ninth Circuit precedent, these contacts are more than

14    enough to render Defendants amenable to suit in this Court. Defendants' arguments to

15    the contrary obscure SME's allegations and misrepresent the legal standards.

16        Finally, although Defendants ask this Court for a discretionary transfer to Ohio,

17    transfer is impossible, as SME is not subject to personal jurisdiction in that forum,

18    another ground on which SME has moved to dismiss the Ohio action. In addition,

19    even if the Ohio court had such jurisdiction over SME, it is for the Ohio court, not this

20    Court, to decide which forum is more "convenient." Regardless, the Central District of

21    California, not Ohio, is the more convenient forum as there are many third-party and

22    SME witnesses based in California and there appear to be no witnesses based in Ohio,

23    other than Defendants.

24        Because both SME's claims and Defendants are properly before this Court,

25    Defendants' motion to dismiss or transfer should be denied.

26                            **FACTUAL BACKGROUND**

27        The allegations of the Complaint

28        SME brought this action to stop Defendants' rampant infringement of SME's

copyrighted sound recordings—including by some of the world's most popular recording artists—to advertise Defendants' shoe and apparel businesses.  (Complaint, Dkt. 1 ("Compl.") ¶ 1).  As SME alleges in its Complaint, Defendants committed copyright infringement by creating, posting and/or distributing, without authorization, at least 170 advertisements to their social media accounts incorporating about 122 copyrighted sound recordings owned and/or controlled by SME.  (*E.g.*, *id.* ¶¶ 7, 45).  Defendants also committed contributory and/or vicarious copyright infringement based on, among other things, their collaboration with social media "influencers" who posted infringing advertisements on social media.  (*E.g.*, *id.* ¶¶ 6, 45).[1]

As SME also alleges, Defendants' and their influencers' social media posts were received by California consumers.  (*E.g.*, *id.* ¶¶ 10, 13).  In addition, Defendants contract with marketing and talent agencies with operations in California to promote their products and create social media advertisements, and some of Defendants' influencers are based and created and uploaded their social media posts in California.  (*E.g.*, *id.* ¶¶ 12-14, 16).  That is no accident, because, while Defendants operate nationwide, they have more retail stores in California than any other state (including Ohio), and one of their primary warehouses at the time of the infringements was in California.  (*E.g.*, *id.* ¶¶ 13-15).  Accordingly, Defendants used their social media advertising to exploit the market for their products in California.  (*E.g.*, *id.* ¶¶ 12-16).  SME discusses these allegations in greater detail below to demonstrate the Court's personal jurisdiction over each Defendant.  *See infra* at Argument § II.  Suffice it to say Defendants distort and misapprehend the legal significance of Plaintiffs' allegations (*see* Mot. 7-8), as well as the underlying evidence tying them to California.

---

[1] Defendants claim to have various defenses based on SME's "arrangements with the social media platforms at issue," like Instagram.  (Motion to Dismiss, Dkt. 24 ("Mot.") at 2-3).  But "Instagram does not grant third parties a license" to any copyrighted works and instead "maintains that third-part[ies] have the responsibility to seek permission from the copyright holder as 'required by law.'"  *Hunley v. Instagram, LLC*, 73 F.4th 1060, 1066 n.2 (9th Cir. 2023).

SME owns or controls (as an exclusive licensee) the entirety of the United States copyrights at issue in this action.  (*See* Declaration of David Jacoby ("Jacoby Decl.") ¶¶ 3-4).  In other words, there are no "overlap[ping]" claims to, or "fractional or concurrent" ownership of, the copyrights over which SME sues, contrary to Defendants' claims (*see* Mot. 1, 4-5, 21-22).  Defendants misleadingly imply that SME shares ownership of these copyrights with parties to either Defendants' improper anticipatory filing in Ohio or a separate action which a different group of music companies, Warner Music Group ("Warner"), brought against Defendants in that forum.  (*Id*.).  But none of these other companies co-own any of these SME sound recordings.  At best, certain of those companies may own or co-own the copyrights to the musical compositions (*i.e.*, musical notes and lyrics, created or arranged by a composer) embodied in these recordings, but that does not mean they co-own any copyright with SME.

Defendants' Anticipatory Filing

This dispute arose on May 9, 2025, when SME first contacted DSW about SME's infringement claims.  SME emailed a former outside counsel for DSW and asked to be put "in touch with counsel for DSW in connection with [SME's] infringement claims."  (*See* Jacoby Decl., Ex. A).  After being connected with retained counsel for Defendants, SME sought to enter a tolling agreement (*id.*, Ex. B at 15)[2], and the parties spent the next few weeks negotiating a toll (*id.* at 7-15).

Throughout this process, SME told Defendants it hoped to resolve this dispute without resorting to formal litigation, and Defendants professed to share this goal. While SME "reserve[d] all … rights" in its initial May 9 outreach, it explained it wanted "to avoid litigation."  (*Id.*, Ex. A).  On May 14, when it requested a toll, SME reiterated that "rather than file [a] lawsuit, SME would much rather see if this can be resolved out of court."  (*Id.*, Ex. B at 11).  On June 11, Defendants proposed "a

---

[2] Page citations refer to the consecutive page numbers assigned pursuant to L.R. 11-5.2, except for *supra* and *infra* cites to pages in this memorandum of law.

1    settlement discussion schedule," including a schedule for mediation. (*Id.*, Ex. C at 21).
2    On June 25, Defendants told SME that they "would like to find a constructive
3    procedure for [] settlement discussions" (*id.*, Ex. D at 27), and they proposed a
4    mediation for "late August or September" (*id.* at 28).

5         The parties' settlement efforts, however, stalled because Defendants did not
6    want to mediate with SME alone and proposed a "group mediation" with other
7    companies in the music industry who had asserted their own infringement claims
8    against Defendants, both informally and formally, regarding different musical works.
9    (*Id.*). Defendants also declined to execute the tolling agreement SME proposed and
10   proposed their own modified agreement with problematic terms. (*Id.* at 27-28).

11        On July 9, at 3:50 p.m. EST, SME thus told Defendants it "plan[ned] to move
12   ahead with preparing a complaint," both because it was "not interested in an industry
13   wide mediation," and because of the parties' stalemate on the tolling agreement. (*Id.* at
14   26). At 6:20 p.m. EST, Defendants' counsel continued to invite a settlement dialogue,
15   explaining: "I continue to believe that a broad settlement discussion is the way to go
16   here, and I will continue to work in that direction, irrespective of whether litigation
17   starts." (*Id.* at 25). Roughly thirty minutes later, at 6:52 p.m. EST, Defendants filed an
18   action in the Southern District of Ohio for declaratory relief (the "Ohio Action"). *See*
19   *Designer Brands Inc. v. Sony Music Entm't*, No. 25-cv-765, Dkt. 1 (S.D. Ohio July 9,
20   2025); *see also* Declaration of Cynthia S. Arato ("Arato Decl."), Ex. 1.

21        This timeline makes clear that Defendants filed the Ohio Action because they
22   believed SME was going to file its own substantive complaint. Consistent with that
23   motivation—to usurp SME's right to a forum of its choosing—Defendants did nothing
24   with the Ohio Action for weeks. They did not even obtain summonses so they could
25   serve SME, or any other defendant, with service of process. (Arato Decl., Ex. 2 at 14).

26        SME filed this copyright infringement action against Defendants on August 6,
27   2025. The next day, on August 7, SME emailed Defendants a copy of the Complaint
28   and wrote: "We understand the parties previously discussed commencing settlement

1   discussions.  SME is prepared to engage in those discussions with DSW and to refrain

2   from serving its complaint, if DSW will continue to do the same with its complaint.  In

3   that setting, each side would preserve its arguments as to which of the two pending

4   litigations should proceed and the status quo would be maintained." (*Id.*, Ex. 3).

5   Defendants did not respond.  Instead, they obtained a summons from the Ohio court on

6   August 7 and served SME on August 8.  (*Id.*, Ex. 2 at 15).  They waited six more

7   weeks before obtaining summonses or serving SME's co-defendants.  (*Id.* at 15-16).

8       It is evident that Defendants hastily filed the Ohio complaint to preempt SME's

9   choice of forum.  *See* Ohio Action Dkt. 1.  Defendants do not identify the copyrighted

10  works they contend they did not infringe; which of their social media advertisements

11  they claim are non-infringing; or the universe of social media platforms on which they

12  placed their ads.  They assert conclusory defenses to infringement, including vague

13  references to public policy and unclean hands.  They fail to substantiate the notion that

14  SME has any relevant connection to Ohio.  They sued SME and other, unaffiliated

15  music companies, but not the SME affiliates that own many of the copyrights at issue

16  and are SME's co-plaintiffs here.  Accordingly, on October 20, 2025, SME filed a

17  motion to dismiss the Ohio complaint on the following grounds, that: (i) the Ohio court

18  lacks personal jurisdiction over SME, (ii) the Ohio Action is an improper

19  "anticipatory" declaratory judgment action, and (iii) the complaint in the Ohio Action

20  lacks the specificity needed to plead a valid claim for a declaratory judgment.  (Arato

21  Decl., Ex. 4).  That motion will be fully briefed on November 24, 2025.

## ARGUMENT

### I.    This Action Has Priority Over The Ohio Action

24      The Court should not dismiss or transfer this action under the "first to file" rule

25  even though Defendants filed the Ohio Action first.  The Ohio Action is an improper

26  "anticipatory" declaratory judgment action which Defendants filed in bad faith to

27  prevent SME, as the natural plaintiff, from litigating its infringement claims in its

28  chosen forum.  As noted above, SME has moved to dismiss the Ohio Action on this

1    ground, and it is equally a reason to deny Defendants' motion to dismiss this action.

2        Even though a chronologically first-filed action is usually afforded priority over

3    a later filing, "an exception to the first-to-file rule typically will be made" in cases of

4    "bad faith, anticipatory suit, and forum shopping." *Alltrade, Inc. v. Uniweld Prods.,*

5    *Inc.*, 946 F.2d 622, 628 (9th Cir. 1991).[3] "Anticipatory suits are disfavored because

6    they are aspects of forum-shopping," *id.*, and courts "should discourage litigants from

7    filing declaratory actions as a means of forum shopping," *Gov't Emps. Ins. Co. v.*

8    *Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998) (en banc).  As the Ninth Circuit has held

9    for decades, preemptive declaratory actions should be rejected because "[t]he

10   wholesome purposes of declaratory acts would be aborted by its use as an instrument

11   of procedural fencing … to choose a forum." *Shell Oil Co. v. Frusetta*, 290 F.2d 689,

12   694 (9th Cir. 1961); *see also S&N Enters., Inc. of Virginia v. WowWee USA, Inc.*, No.

13   18-cv-2255, 2018 WL 6266569, at *4 (S.D. Cal. Nov. 30, 2018) (collecting cases,

14   including *Gribin v. Hammer Galleries*, 793 F. Supp. 233, 234-37 (C.D. Cal. 1992)).

15   "Application of the first to file rule in such situations would thwart settlement

16   negotiations, encouraging intellectual property holders to file suit rather than

17   communicate with an alleged infringer." *Z-Line Designs, Inc. v. Bell'O Int'l, LLC*, 218

18   F.R.D. 663, 665 (N.D. Cal. 2003); *accord Brighton Collectibles, Inc. v. Coldwater*

19   *Creek, Inc.*, No. 06-cv-1848, 2006 WL 4117032, at *3 (S.D. Cal. Nov. 21, 2006).

20       For these reasons, "where the declaratory judgment action is filed in anticipation

21   of an infringement action, the infringement action should proceed, even when filed

22   later." *Xoxide, Inc. v. Ford Motor Co.*, 448 F. Supp. 2d 1188, 1193 (C.D. Cal. 2006);

23   *accord, e.g.*, *Brighton Collectibles*, 2006 WL 4117032, at *3; *Z-Line Designs*, 218

24   F.R.D. at 665-67.  This remains true even where, as here, DSW sought to raise its

25   anticipated defenses to this action in its preemptive Ohio filing.  Indeed, "[t]he

26   anticipation of defenses is not ordinarily a proper use of the declaratory judgment

27

28   _____

[3] Unless otherwise noted (1) quotations omit internal quotation marks, citations, footnotes, and marks in the original source indicating alterations and (2) emphases are added by SME.

1  procedure.  It deprives the plaintiff of his traditional choice of forum and timing, and it

2  provokes a disorderly race to the courthouse."  *Morgan Drexen, Inc. v. Consumer Fin.*

3  *Prot. Bureau*, 785 F.3d 684, 697 (D.C. Cir. 2015); *see, e.g.*, *Veoh Networks, Inc. v.*

4  *UMG Recordings, Inc.*, 522 F. Supp. 2d 1265, 1271 (S.D. Cal. 2007) ("using the

5  Declaratory Judgment Act to anticipate an affirmative defense is not ordinarily

6  proper").

7          Here, the record could not be clearer that Defendants brought the Ohio Action in

8  anticipation of SME filing its own substantive action and did so in bad faith, through

9  deceptive gamesmanship, to deprive SME of its chosen forum.  It is undisputed that

10 Defendants "filed suit on receipt of specific, concrete indications that a suit by [SME]

11 was imminent."  *Xoxide*, 448 F. Supp. 2d 1188 at 1192; *accord, e.g.*, *S&N Enters.*,

12 2018 WL 6266569, at *4; *Brighton Collectibles*, 2006 WL 4117032, at *3.  SME told

13 DSW it would move forward with a complaint at 3:50 pm on July 9, 2025, and DSW

14 filed the Ohio Action roughly *three hours* later.  *See supra* at 5.  The threadbare nature

15 of the Ohio complaint, which does not even list the social media posts or copyrighted

16 works at issue, makes the complaint defective as a matter of law (*see* Arato Decl., Ex.

17 4 at 29, 42-45) and suggests that Defendants sprinted to court to get on file as quickly

18 as possible once SME warned it would sue.  *See supra* at 6.  Defendants' post-filing

19 conduct confirms this, since Defendants neither obtained a summons nor made any

20 effort to serve SME with their anticipatory filing until *after* SME informed them it had

21 filed this action in this Court.  *See supra* at 5-6.

22         Unlike Defendants, during the parties' pre-suit communications, SME, while

23 expressing its desire to reach an out-of-court resolution (*see supra* at 4), was upfront

24 and candid that it could not "promise you that SME will continue to refrain from

25 moving forward" (Jacoby Decl., Ex. B at 12).  Defendants, on the other hand, never

26 suggested they were considering filing their own declaratory judgment action and

27 repeatedly assured SME they wished to pursue an out-of-court resolution.  *See supra* at

28 4-5.  In fact, just thirty minutes before Defendants filed the Ohio Action, their counsel

told SME: "I continue to believe that a broad settlement discussion is the way to go here, and I will continue to work in that direction, irrespective of whether litigation starts." (Jacoby Decl., Ex. D at 25).  Defendants' emails thus sought to lull SME into delay, to ensure that they could race to court to file their complaint, which—given the timing—Defendants must have been drafting throughout the time they professed a desire to pursue an out-of-court settlement.  At minimum, Defendants' suggestion that there was a question as to "whether litigation" would commence was highly deceptive considering they were literally only minutes away from filing their own complaint.

Defendants' arguments against applying the "anticipatory filing" exception are meritless.  The lone case Defendants cite (Mot. 21) is nothing like this one: there, the court found that the first-filed action was not "anticipatory" because *in addition* to a declaratory judgment, the plaintiff also sought a temporary restraining order, preliminary injunction, and $1.5 million in monetary damages for alleged trade secret misappropriation.  *See HiTherm, LLC v. Victaulic Co.*, No. 22-cv-924, 2022 WL 19239750, at *1, *3 (C.D. Cal. July 7, 2022).  The plaintiff thus had a "preexisting motive to seek relief *beyond a declaratory judgment*." *Id.* at *3.  In contrast, Defendants seek in the Ohio Action only a declaratory judgment (and associated costs and fees), confirming that their purpose was to preempt SME's lawsuit.  Defendants' supposed goal of litigating against multiple parties in a single Ohio action does not justify their anticipatory filing.  At best, that was merely the supposed strategic reason why Defendants wanted to thwart SME's affirmative action.  Notably, *HiTherm* reaffirms that "a plaintiff should not be deprived of its traditional choice of forum because a defendant with notice of an impending suit first files a declaratory relief action," and that this is the "most important consideration" when applying the anticipatory-filing exception. *Id.* at *2.

SME has moved to dismiss the Ohio Action, which is rife with pleading defects, given Defendants' race to the courthouse, and for lack of personal jurisdiction.  (*See* Arato Decl., Ex. 4).  If and when SME succeeds on its motion, there will be no Ohio

1  Action to prioritize over this one.  That is another reason the Court should not defer to

2  the Ohio Action.

3        Furthermore, while legally irrelevant to the anticipatory-suit exception,

4  Defendants did not "need to join SME and the other labels" in the anticipatory Ohio

5  Action because of the supposed "commonality between the accused works, songs, and

6  posts." (Mot. 21).  This is merely attorney argument, unsupported by any declaration

7  or other evidence concerning Defendants' actual motivations.  It also rests on the

8  misleading assertion that SME's sound recording copyrights are "owned by multiple

9  labels and publishers" and that "both Warner and [SME] claim to own some fraction of

10  the copyrights to the same" copyrighted works. (Mot. 5).  That is wrong.  SME owns

11  and/or controls 100% of the copyrights over which it is suing, all of which are

12  copyrights to sound recordings. (*See* Jacoby Decl. ¶¶ 3-4).  The false example

13  Defendants give—Beyoncé's "America Has A Problem"—illustrates this point, since

14  SME controls the entirety of the copyright in that sound recording (*id.* ¶ 4), regardless

15  of whether a Warner affiliate owns all or part of the recording's underlying musical

16  composition.  *See Williams v. Gaye*, 895 F.3d 1106, 1121 (9th Cir. 2018) ("Sound

17  recordings and musical compositions are separate works with their own distinct

18  copyrights."); *see also* 17 U.S.C. §§ 102, 114, 115.  If SME proves infringement of its

19  sound recordings, it will recover 100% of any remedy and related permanent injunctive

20  relief.

21        The Court also should reject Defendants' contention that SME's claims should

22  proceed in Ohio, where Warner's suit is proceeding, because SME allegedly would

23  need to share statutory damages with Warner.  Defendants point to one Second Circuit

24  case, holding that a defendant who is found in a single action to have infringed

25  separately owned copyrights for both a sound recording and the recording's underlying

26  musical composition is liable for only a single award of statutory damages, not

27  multiple awards. (Mot. 23).  One district court in Washington may have followed that

28  rule (*see id.*), but the Ninth Circuit has never adopted it, and there are good reasons to

believe it will not.[4]  Even if it does, the issue is moot if either SME or Warner seek actual damages and profits from Defendants, rather than statutory damages.  *See* 17 U.S.C. § 504(a).  It is also moot because Warner's separate lawsuit in Ohio (*see* Mot. 4-5) necessarily means there will be multiple trials, so separate juries will have to consider how to allocate statutory damages regardless of whether this action proceeds.  Thus, the purported efficiency of litigating this action in Ohio is speculative at best.

Finally, Defendants claim they "did not short-circuit" settlement talks by filing the Ohio Action (Mot. 22), but that is not the point.  Regardless of whether settlement discussions could continue, Defendants filed their lawsuit because they believed SME was going to sue in short order and wanted to preempt that by racing to file in their preferred forum.  These are precisely the circumstances in which the first-to-file rule does not apply, *see supra* at 7-8, and Defendants' motion should therefore be denied.

## II.   The Court Has Personal Jurisdiction Over All Defendants

Defendants cannot escape this forum on jurisdictional grounds either.  While the personal jurisdiction test is multi-layered and multi-pronged (Mot. 12), Defendants do not challenge SME's showing for most of the prongs (*id*. at 17-19).[5]  Defendants do not challenge the second two prongs of the three-part due process test (whether SME's claim arises out of Defendants' forum-related activities or the exercise of due process comports with fair play and substantial justice) or the first prong of the purposeful

---

[4] *See Desire, LLC v. Manna Textiles, Inc.*, 986 F.3d 1253, 1264 (9th Cir. 2021) ("number of awards available" depends on "number of individual 'works' infringed"); *Williams*, 895 F.3d at 1121 ("[s]ound recordings and musical compositions are separate works").  In addition, the Copyright Act's text demonstrates that separate owners of recordings and compositions may recover separate statutory damages because any limitation on multiple awards in this setting is to be imposed only on a single copyright owner.  *See* Melville B. Nimmer & David Nimmer, 5 *Nimmer on Copyright* § 14.04[E][1][b][i] (2025).

[5] Defendants have waived any challenge to the prongs they do not dispute. *See Sonos, Inc. v. Lenbrook Indus. Ltd. & Lenbrook Am. Corp.*, No. 19-cv-5411, 2020 WL 5032924, at *2 (C.D. Cal. Jan. 27, 2020) ("Lack of personal jurisdiction is a waivable affirmative defense."); *Warner Bros. Home Entm't v. Shi*, No. 12-cv-7753, 2013 WL 12116586, at *4 n.4 (C.D. Cal. Jan. 29, 2013) (defendant "waive[d] objections" under prong it did not address).

direction test (whether Defendants committed an intentional act). *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1227-28 (9th Cir. 2011).[6] This motion thus boils down to whether Defendants *either* (1) "purposefully avail[ed]" themselves of this forum; *or* (2) "expressly aimed" their infringements into the forum and "caus[ed] harm that [they] know[] is likely to be suffered" here, such that they satisfy the "purposeful direction" test. *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d at 1227-28; *see also* (Mot. 12).

SME's Complaint properly alleges each of the ostensibly challenged prongs, and Defendants do not meaningfully challenge them. Defendants do not address, and thus fail to contradict, SME's allegations of Defendants' "purposeful availment" of the California forum. (Mot. 17-19). Defendants misrepresent the recently-developed Ninth Circuit law on "purposeful direction" to wrongly contend that SME's pleading fails to satisfy that test. (*Id*. at 12-13, 17-18). Defendants also ignore that (1) the Court "must [take] as true" the "uncontroverted allegations in [SME's] complaint"; (2) even where SME's "allegations … are contradicted by affidavit," the Court must "resolve factual disputes in [SME's] favor"; and (3) "[SME] need only make a prima facie showing of jurisdictional facts to withstand [their] motion," considering Defendants rely solely on written materials. *Mavrix*, 647 F.3d at 1223.

### A.   The Court Has Jurisdiction Over DSW

**1. Purposeful availment.** The Court has personal jurisdiction over DSW because SME has made a prima facie showing—which DSW does not contradict—that various of DSW's alleged copyright infringements occurred in California, such

---

[6] Regardless, SME easily satisfies the prongs Defendants do not address. *See*, *e.g*., *Mavrix*, 647 F.3d at 1228 (second prong of due process test satisfied where the "claim of copyright infringement arises out of [defendants' infringement] on [an online platform] accessible to users in the forum state"); *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1093 (9th Cir. 2023) (third prong of due process test satisfied because "it is fair to subject that defendant to personal jurisdiction in [a] forum" where "a defendant chooses to conduct a part of its general business"); *Mavrix*, 647 F.3d at 1229 (first prong of purposeful direction test met where defendant intentionally posted the allegedly infringing content.).

that DSW purposefully availed itself of the California forum.  DSW ignores its purposeful availment by pretending that purposeful availment and purposeful direction are one and the same (Mot. 12, 17), but they are distinct paths to establishing personal jurisdiction.  While the purposeful direction test "focuses on conduct that takes place *outside* the forum state and has effects inside the forum state," the purposeful *availment* test looks to "conduct that takes place inside the forum state."  *Freestream Aircraft (Bermuda) Ltd. v. Aero L. Grp.*, 905 F.3d 597, 604 (9th Cir. 2018).  In particular, "the commission of a tort within the forum state usually supports the exercise of personal jurisdiction," since it satisfies the "personal availment" requirement.  *Id.* at 603-04, 606.[7]

SME has alleged—and DSW does not challenge—several ways in which DSW committed a tort within the state, such that it purposefully availed itself of the forum. *See Freestream*, 905 F.3d at 604.

SME alleges that "DSW … created and distributed infringing advertisements on social media platforms that were received by numerous consumers in California, resulting in rampant unauthorized reproduction, distribution, and/or public performance of SME's sound[] recordings (as well as the creation of unauthorized derivative works) within California." (Compl. ¶ 11).  Unlike Topo (Mot. 9), DSW does not deny that it created and uploaded infringing videos in California.  Regardless of where DSW created or uploaded them, DSW directly exploited its infringing videos on its own social media accounts and thus caused the posts to, at a minimum, be publicly performed within California to consumers located in the state.  *See Am. Broad. Companies, Inc. v. Aereo, Inc.*, 573 U.S. 431, 441 (2014) ("*[B]oth* the [poster] *and* the viewer of [a social media post] 'perform,' because they both show [the posts']

---

[7] While some cases suggest "purposeful availment" is more appropriate for contract than tort claims, the Ninth Circuit disagreed in *Freestream*, 905 F.3d at 604, and has suggested there is no "rigid dividing line between the two inquiries," since "similar principles underlie both tests."  *Herbal Brands*, 72 F.4th at 1094 n.6.

images and make audible [their] sounds.") (emphasis in original); *cf. Spanski Enters., Inc. v. Telewizja Polska, S.A.*, 883 F.3d 904, 915 (D.C. Cir. 2018) (foreign company's online transmission of programs to viewers in the United States resulted in "the infringing display of copyrighted images on the viewer[s'] screen[s]," and "the infringing performance[s] occurred in the United States"). DSW does not challenge SME's allegation, which the Court must accept as true. *Mavrix*, 647 F.3d at 1223.

SME nevertheless also alleges that DSW contributed to its influencers' infringing posts and that some of these posts were created and uploaded in California. SME alleges that DSW (1) "directed, oversaw, [and] contributed to … the unauthorized reproduction, distribution, and/or public performance of SME's sound recordings … *by DSW's influencers and other third parties in California* in connection with the creation of infringing social media advertisements for DSW" (Compl. ¶ 12); and (2) "influencers DSW has partnered with—and, on information and belief, paid— to post infringing advertisements *are based in California*" (*id.* ¶ 14; *see also id.* ¶¶ 40-43). DSW, moreover, concedes it "reposted," on its own social media accounts, "content [which] an influencer" created at the "Coachella Valley Music & Arts Festival … in Indio, California." (Mot. 7; *see also* Compl. ¶¶ 14, 51). These are California-based torts, for which DSW is secondarily liable. *See, e.g.*, *A&M Recs., Inc. v. Napster, Inc.*, 239 F.3d 1004, 1019-20 (9th Cir. 2001).

Finally, SME alleges that, *at the time of the infringements*, DSW maintained a shipping facility in California, out of which DSW distributed the products promoted by the infringing videos. As SME alleges, at the time DSW and its influencers infringed SME's copyrights, DSW "maintained in California (via a third party operator) a facility for processing, sorting, and shipping products—including, on information and belief, products DSW and its influencers marketed to consumers using advertisements that infringed SME's sound recordings" and "products DSW and its influencers marketed with unauthorized advertisements that used SME sound recordings were shipped, with DSW's knowledge, from [the] facility in California." (Compl. ¶ 15; *see*

1   *also* Mot. 7-8).

2        DSW's distribution facility in California is yet another form of purposeful

3   availment, as the Ninth Circuit recognized in *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th

4   972 (9th Cir. 2021), a trademark infringement case.  There, the Ninth Circuit found

5   that the defendant's "choice of [contracting with a] fulfilment center" within the

6   United States for shipping its products "[wa]s especially telling" and confirmed that

7   personal jurisdiction in the United States was proper.  *Id.* at 982.  According to the

8   Court: "When a defendant corporation chooses to associate itself with a forum through

9   a contractual relationship that envisions continuing and wide-reaching contacts, the

10  defendant purposefully avails itself of the forum and satisfies minimum contacts." *Id.*

11  That was true of the defendant in *Ayla*, and it is true of DSW here.

12       DSW does not dispute SME's allegations regarding its distribution facility,

13  which the Court must accept as true.  *Mavrix*, 647 F.3d at 1223.  DSW merely

14  contends it no longer maintained this facility as of the date SME filed this action (Mot.

15  8), but that is irrelevant to DSW's purposeful availment in connection with the

16  infringements at issue.  *Cf. Freestream*, 905 F.3d at 603, 607 (Washington resident

17  who engaged in defamation within Nevada "purposefully availed" himself of the

18  forum even though he then left Nevada).

19       DSW also operates more than 40 retail stores in California (Compl. ¶ 13)—more

20  than in any other state (*id.*)—and it contracts with marketing and talent agencies

21  located here to promote its products and create social media advertisements (Arato

22  Decl. ¶¶ 7-23).

23       Because SME has made a prima facie showing of DSW's purposeful availment,

24  SME has sufficiently alleged the Court's personal jurisdiction over DSW.  *Mavrix*, 647

25  F.3d at 1227-28.  In the alternative, however, DSW is subject to jurisdiction under a

26  "purposeful direction" theory.

27       **2.  Purposeful direction.**  SME has also sufficiently alleged DSW's purposeful

28  direction into California because SME has alleged that: (a) DSW "expressly aimed" its

conduct at California, and (b) knew that harm was "likely to be suffered" in California. *Mavrix*, 647 F.3d at 1228. The Ninth Circuit's decision in *Mavrix* is instructive because there, neither the plaintiff copyright owner nor the defendant infringer were California companies, yet the Ninth Circuit held that personal jurisdiction was proper because the defendant's nationwide business activities included exploiting the California market.

      **a. Express aiming.** Like the *Mavrix* defendant, DSW's other California based activities show that it "expressly aimed" its conduct at California by using SME's "copyrighted [works] as part of its exploitation of the California market for its own commercial gain." *Id.* at 1229. In both *Mavrix* and en banc in *Briskin v. Shopify, Inc.*, 135 F.4th 739 (9th Cir. 2025), the Ninth Circuit held that "a company's internet activity may subject the company to specific personal jurisdiction in a given forum if the company 'knows—either actually or constructively' about its customer base there and 'exploits that base for commercial gain.'" *Briskin*, 135 F.4th at 757 (quoting *Mavrix*, 647 F.3d at 1230). That is precisely what SME alleges, and what DSW does not challenge:

- "DSW and its influencers intentionally targeted California consumers by using SME's sound recordings in the infringing advertisements as an essential means of reaching, soliciting, and selling to these customers—including selling via retail locations in California. Indeed, DSW maintains more than 40 retail stores in California—more stores than in any other State within the United States. On information and belief, the infringing advertisements created by DSW and its influencers successfully attracted California customers, resulting in substantial sales of DSW products, both online for delivery to California residents and in California retail locations." (Compl. ¶ 13).

- "DSW used California-based influencers and focused on California events [like Coachella] to increase the impact on California consumers of DSW's infringing social media advertising and to promote sales within California." (*Id.* ¶ 14).

In addition, DSW's own website (https://www.dsw.com/) establishes that DSW targets California consumers, as the website contains links to a "California Privacy Notice," *see* https://www.dsw.com/legal/california-privacy-notice, and a "California Prop 65" webpage, *see* https://www.dsw.com/legal/ca-prop65. (Arato Decl., Exs. 17-19). DSW is also registered to do business in California. (*Id.*, Ex. 20).

DSW misrepresents that the above allegations are inadequate, and that personal jurisdiction is lacking, because SME has not alleged that DSW (1) took "specific or special efforts to target the California market"; (2) "targeted California at the exclusion of the rest of the country"; or (3) targeted California customers "more than they target[] customers in the other 49 states." (Mot. 7, 8, 19). But, under the Ninth Circuit's en banc decision in *Briskin*, a plaintiff need not show any "forum-specific focus" or a defendant's "differential treatment of the forum state" to establish personal jurisdiction. *Briskin*, 135 F.4th at 757-58 & nn.15, 17.[8] To the contrary, "'corporations whose websites exploit a national market' cannot 'defeat jurisdiction in states where those websites generate substantial profits from local consumers.'" *Id.* at 757 (quoting *Mavrix*, 647 F.3d at 1231). Thus, DSW's deliberate "exploitation of the California market" is enough, regardless of California's "share of [DSW's] overall business." *Mavrix*, 647 F.3d at 1229.

In any event, even though it is not required, Plaintiffs *have* shown that DSW makes special efforts to target California through the concentration of retail stores, location of social media influencers, and DSW's website.

SME has made far more than the required prima facie showing of DSW's "express aiming."

**b. Harm.** SME also sufficiently alleges that DSW knew harm was "likely to be suffered" in California. *Mavrix*, 647 F.3d at 1228. DSW again misrepresents the law: in the Ninth Circuit, SME need not allege that the "brunt of the harm" was "suffered in

---

[8] In *Briskin*, the Ninth Circuit en banc overruled prior decisions to the extent they imposed such a requirement. *See id.* Plaintiffs cite some of those cases for other, unrelated principles.

California" to establish personal jurisdiction. (Mot. 12, 17-18).  The Ninth Circuit *holds the opposite*: "the 'brunt' of the harm need not be suffered in the forum state": "[i]f a jurisdictionally sufficient amount of harm is suffered in the forum state, it does not matter that even more harm might have been suffered in another state." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1207 (9th Cir. 2006).  Here, SME has alleged several types of jurisdictionally sufficient harm.

      *First*, SME has alleged that several of the at-issue infringements occurred here (*see supra* at 13-14), and it is well recognized that a "defendant causes harm in a particular forum when the 'bad acts' that form the basis of the plaintiff's complaint occur in that forum." *Doe v. WebGroup Czech Republic, a.s.*, 93 F.4th 442, 456 (9th Cir. 2024), *overruled on other grounds by Briskin*, 135 F.4th 739.  For instance, in assessing whether a foreign defendant's overseas actions caused sufficient harm in the United States to support personal jurisdiction over the defendant under Fed. R. Civ. P. 4(k)(2), courts have found sufficient harm based on the occurrence of some infringements in the forum.  Thus, the Ninth Circuit "held that sufficient publication-related harms (*i.e.*, copyright infringement) had been suffered in the United States when U.S. viewers made up only 4.6% of the viewership of a[n] [infringing] foreign website." *Doe*, 93 F.4th at 456 (citing *Will Co. v. Lee*, 47 F.4th 917, 926-27 (9th Cir. 2022), *overruled on other grounds by Briskin*, 135 F.4th 739); *see also Spanski*, 883 F.3d at 915 ("violation of a copyright holder's exclusive performance right inside the United States" represented "injury" in the forum); *Mg Premium Ltd. v. Hoi*, No. 23-cv-349, 2023 WL 8895698, at *2-3 (C.D. Cal. Nov. 6, 2023) (in copyright case, holding that "U.S.-based [website] visits" constituted harm in the U.S.); *McCollum v. Opulous*, No. 22-cv-527, 2022 WL 17218072 at *4-5 (C.D. Cal. Aug. 3, 2022) (defendant who uses social media to interact with American consumers aimed infringing post toward the forum and had knowledge that it would harm plaintiff).

      Here, as explained above, DSW's conduct in exploiting its advertisements on its own social media accounts resulted in copyright infringement within California.  *See*

*supra* at 13-14.  That "harm was foreseeable" to DSW, given that DSW "actively appealed to a [California] audience" and engaged California influencers to infringe Plaintiffs' copyrights.  *Will Co.*, 47 F.4th at 927; *see also Washington Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 679 (9th Cir. 2012) (finding it "foreseeable that the loss will be inflicted … in the forum where the infringement took place"), *abrogated on other grounds by Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1070 (9th Cir. 2017).  Nothing more is required.

   *Second*, the loss of "California-based [economic] value" can satisfy the harm requirement as well.  *Mavrix*, 647 F.3d at 1232.  In *Mavrix*, for instance, although both plaintiff and defendant were headquartered outside California, the Court found it sufficient that the plaintiff had lost California sales.  *See id.* at 1231-32; *accord CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1079 (9th Cir. 2011) (harm can be felt "in the forum of the relevant market").  Here, had DSW properly sought and obtained licenses to use SME's copyrighted music, DSW would have transacted with SME's licensing teams, many of whose employees are based in California.  (Jacoby Decl. ¶ 5).  DSW's infringement therefore directly resulted in Plaintiffs' loss of California-based economic value.

   *Third*, in the copyright context, the harm for which a plaintiff can recover is not limited to the "actual damages suffered" but also includes the "profits of the infringer that are attributable to the infringement."  17 U.S.C. § 504(b).  DSW does not challenge SME's allegation that DSW intended that its copyright infringement would lead to increased sales and profit in and from California.  *See supra* at 16-17.  This is sufficient, since "[a]t bottom, both purposeful availment and purposeful direction ask whether defendants have voluntarily derived some benefit from their interstate activities."  *Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1107 (9th Cir. 2020).  As DSW voluntarily derived benefits in California from its infringing conduct, it cannot escape the jurisdiction of this forum.

1

**B.      The Court Has Jurisdiction Over Topo**

2          For substantially the same reasons, Topo cannot escape this Court's jurisdiction

3   either.  Plaintiffs have made the same allegations against Topo as against DSW, and

4   Topo disputes only some of them, primarily arguing that Topo (1) was not involved

5   with DSW's social media posts, including the Coachella post; (2) has no retail stores in

6   California or anywhere else; and (3) did not use DSW's California warehouse.  (*See*

7   Riley Decl.).  None of that undercuts the Court's personal jurisdiction over Topo.

8          Although Topo tries to distance itself from DSW's posts, it cannot hide from its

9   own posts.  Topo concedes that an influencer posted an infringing Topo advertisement

10   that "refers to a run in Joshua Tree" and identifies one of Topo's products as the

11   "Joshua Tree shoe of choice."  (Riley Decl. ¶ 6; *see also* Mot. 10 n.7).  Joshua Tree is

12   in California, and the post contains footage from there.  (Arato Decl. ¶ 28, Ex. 21).

13   Accordingly, like the Coachella post, the Joshua Tree post is evidence of copyright

14   infringement within California and Topo's use of California-based influencers to target

15   California consumers and drive California sales.  *See supra* at 13-14, 16-17.

16          Similarly, while Topo contends it has no physical retail stores in California,

17   Topo is registered to do business in California (Arato Decl. ¶ 29, Ex. 22) and exploits

18   the California market, including through online sales to California consumers.  Topo

19   also distributes its goods in California through more than 130 third-party retail stores.

20   (Arato Decl. ¶ 30, Ex. 23).  It does not matter that Topo's "shipments to Texas and

21   Arizona" have exceeded shipments to California "thus far in 2025," or that no state

22   contributes more than 9% of Topo's revenues (Riley Decl. ¶ 10(b)).  Topo's deliberate

23   "exploitation of the California market" is enough, regardless of California's "share of

24   [DSW's] overall business."  *Mavrix*, 647 F.3d at 1229.  Topo's carefully worded

25   statements clearly indicate that Topo's California-based activities are considerable,

26   suggesting that California is likely Topo's *third-largest market* and contributes

27   significantly to Topo's revenues.  That is more than enough.  *See Briskin*, 135 F.4th at

28   758 (forum with "less than one percent of [the] total U.S. circulation" of the

---

OPP. TO MOT. TO DISMISS                      20                      Case No. 2:25-cv-07285-JC

1  defendant's publication had jurisdiction).

2      Topo also does not actually dispute that it, like DSW, has a California

3  warehouse.  Topo contends only that the specific "'warehouse' referenced in

4  Paragraph 15 of the Complaint was not used by Topo."  (Riley Decl. ¶ 10(e)).

5      For these reasons, SME has sufficiently alleged personal jurisdiction over Topo.

6      **C.    The Court Has Jurisdiction Over DBI**

7      DBI is also subject to the Court's personal jurisdiction.  As with Topo, Plaintiffs

8  have made the same allegations against DBI as against DSW, and DBI disputes only

9  some of them, primarily arguing that (1) DBI was responsible for only one allegedly

10  infringing social media post; (2) DBI has no influencers; and (3) DBI does not own the

11  identified California warehouse.  (*See* Alfano Decl.).  None of that undercuts the

12  Court's personal jurisdiction over DBI.

13      It is irrelevant that DBI is responsible for only one of the allegedly infringing

14  posts or that this post contains no California content and was not created or uploaded

15  in California.  (Alfano Decl. ¶¶ 7, 10).  DBI is subject to personal jurisdiction for

16  exploiting this post via its own social media account for the reasons set forth above.

17  (*See also* Compl. ¶¶ 11-12; *id.* at p.1).

18      The Court also should reject DBI's contention that it does not contract with,

19  employ, or use influencers (Alfano Decl. ¶¶ 9-10), because that statement is

20  contradicted by DBI's other statements, DBI's own website, and the resume of one of

21  Defendants' employees.  To the extent the statement raises any factual dispute, the

22  Court should resolve that dispute in SME's favor.  *Mavrix*, 647 F.3d at 1223.  While

23  DBI's declarant makes her sweeping statement once in her declaration, she states

24  elsewhere only that "DBI does not *generally* engage with influencers or other third

25  parties to promote products," and "DBI does *generally* not partner with 'influencers'"

26  (Alfano Decl. ¶¶ 4, 10(d)), which necessarily implies that DBI does these things at

27  least sometimes.  DBI's own website also flatly contradicts the declarant's denial.

28  DBI's website contains an entire page devoted to "Influencer and Marketing

Partnerships" and that page says DBI "partners with select influencers." (Compl. ¶ 38 & n.8).[9] Moreover, a former employee of DBI, currently employed by DSW, boasts on her LinkedIn that, while a "Brand Marketing Coordinator" at DBI, she "[e]xecuted a Spring 2024 influencer campaign resulting in enhanced brand awareness with 425,000 impressions and a total engagement of 84% across five influencers." (Arato Decl. ¶ 31, Ex. 24 at 152).

DBI is similarly cagey when it comes to California warehouses. DBI claims that "DBI has no … warehouses" in California, because the one identified in the Complaint "was owned and operated by a third party and was not owned by DBI." (Alfano Decl. ¶¶ 8, 10(e)). Whether DBI or a third-party owned the identified California warehouse is irrelevant because DBI used the warehouse to conduct its business. Indeed, DBI's SEC Form 10-K reports that DBI's "inventory is shipped" to "distribution center[s]," including the facility "located in California" at the time of the infringements, "where the inventory is then processed" and shipped "on to the stores." (Arato Decl., Ex. 25 at 164). Clearly, DBI had a contractual arrangement in California at the time of the infringements, of the sort that demonstrates purposeful availment. *See supra* at 22.

In addition, despite claiming it is merely a holding company that does not directly sell products, it paid nearly $1 million in income tax to California in 2023, during the time of the infringements. (Arato Decl., Ex. 25 at 253). The only state or local jurisdiction to which it paid more income tax was Columbus, Ohio. (*See id.*). DBI cannot dispute that it deliberately exploits the California market, just like its subsidiaries. It is equally subject to personal jurisdiction in this forum.

### D.   At A Minimum, The Court Should Grant Jurisdictional Discovery Or Leave To Amend

Defendants' Rule 12(b)(2) motions should be denied outright, but if the Court determines that any issues require further development, it should permit jurisdictional

---

[9] *Accord* https://designerbrands.com/news/marketing-partnerships/ (current website).

discovery.  "[D]iscovery should be granted when … the jurisdictional facts are contested or more facts are needed."  *Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003).[10]  SME has already presented evidence of Defendants' efforts to target the California market and to work with influencers and other third parties based in California.  To the extent any further proof is needed on those subjects, it is reasonable to require Defendants to submit to discovery.  Similarly, SME has raised serious questions about the accuracy and completeness of Topo's and DBI's declarations, and to the extent necessary, those companies should submit to discovery on the subjects raised therein, including their use of California warehouses.  The fact that DSW chose not to submit *any* declaration suggests that the evidence concerning its California contacts is unfavorable to its position, and that discovery would be fruitful.

Likewise, if the Court determines that facts discussed in Plaintiffs' opposition papers should be pled more specifically in the Complaint, it should grant leave to amend.  *See, e.g.*, *Carolina Cas. Ins. Co. v. Team Equip., Inc.*, 741 F.3d 1082, 1086 (9th Cir. 2014) (holding that a "plaintiff should be permitted to amend a complaint to cure 'technical' defects," including jurisdictional allegations).  Defendants cannot escape a proper forum based on mere technicalities.

## III.    Venue Is Proper

Defendants are doubly wrong that "venue is improper for all defendants" because "personal jurisdiction is lacking as to Topo and DBI."  (Mot. 20).  The premise of Defendants' argument is false, since as explained above, the Court does have personal jurisdiction over Topo and DBI.  In addition, a theoretical dismissal of Topo or DBI would not require dismissal of the whole Complaint.  "[T]he defense of improper venue is personal to the party to whom it applies," and the court should

---

[10] *See also Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1135 (9th Cir. 2003) (same); *Twentieth Century Fox Int'l Corp. v. Scriba*, 385 F. App'x 651, 652 (9th Cir. 2010) (same); *Baton v. Ledger SAS*, No. 21-17036, 2022 WL 17352192, at *2 (9th Cir. Dec. 1, 2022) ("refusal to grant jurisdictional discovery [i]s prejudicial where there [i]s a reasonable probability that the outcome of the motion would be different").

1  "dismiss or transfer only the claims against those parties as to whom venue is

2  improper."  *Anrig v. Ringsby United*, 603 F.2d 1319, 1324 (9th Cir. 1978); *accord*

3  Charles Alan Wright & Arthur R. Miller, 14D *Fed. Prac. & Proc. Juris.* § 3807 (4th

4  ed.) ("The fact that venue is improper with regard to one or more of the parties does

5  not require the court to dismiss the entire case.  … [T]he district court will merely

6  dismiss the claims as to that party and the litigation will continue with the others.").

7  The district-court cases Defendants cite do not suggest otherwise (*see* Mot. 15), nor

8  could they override the above Ninth Circuit precedent.[11]

9  **IV.    There Is No Basis To Transfer This Action**

10         The Court should deny Defendants' motion to transfer this action to Ohio, where

11  Defendants improperly filed an anticipatory declaratory judgment complaint.

12         *First*, the Court should not entertain Defendants' arguments that this action

13  should be transferred based on convenience (Mot. 23-25), because arguments about

14  "the respective convenience of the two courts … should be addressed to the court in

15  the first-filed action."  *Alltrade*, 946 F.2d at 628.[12]  SME has moved to dismiss

16  Defendants' declaratory judgment action in Ohio, including because it was an

17  improper anticipatory filing, and Defendants can raise their (erroneous) convenience

18  arguments before the Ohio court in connection with that motion.  (*See* Arato Decl., Ex.

19  4 at 28, 38-42).

20         *Second*, the Court cannot transfer this action to Ohio because the Ohio court

21  lacks personal jurisdiction over SME and this action thus could not have been brought

22  there.  *See* 28 U.S.C. § 1404(a) ("a district court may transfer any civil action to any

23

24  [11] Moreover, contrary to Defendants' claims (Mot. 2 n.3, 20), dismissal for lack of venue or
jurisdiction is *without* prejudice.  *In re Hall, Bayoutree Assocs., Ltd.*, 939 F.2d 802, 804 (9th
25  Cir. 1991).

26  [12] *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 96 (9th Cir. 1982) (same, for "forum
non conveniens"); *Rode Microphones, LLC v. FEAM GMBH*, No. 23-cv-1082, 2023 WL
27  4873632, at *3 (C.D. Cal. July 31, 2023) (same, for "balance of convenience"); *Medtronic
Corevalve LLC v. Edwards Lifesciences Corp.*, No. 11-cv-961, 2012 WL 12888673, at *7
28  n.20 (C.D. Cal. Jan. 9, 2012) (same, for "transfer of venue under 28 U.S.C. § 1404(a)").

other district or division where it might have been brought"); *In re Bozic*, 888 F.3d 1048, 1053 (9th Cir. 2018) (court cannot transfer to improper venue); *see also* Mot. 16, 25 (transferee court must have jurisdiction and venue). Sony Music Entertainment (the only defendant in the Ohio Action that is also a plaintiff here) has moved to dismiss the Ohio Action for lack of personal jurisdiction. (*See* Arato Decl., Ex. 4 at 28, 34-38). This motion *shows* that transfer is impermissible, but even the fact that it is pending is a reason to deny transfer. *See Brighton Collectibles*, 2006 WL 4117032, at *4 (denying transfer because motion to dismiss was pending in other forum).

    *Third*, Defendants have failed to "make [the] strong showing of inconvenience" required "to warrant upsetting [SME's] choice of forum." *Medtronic Corevalve*, 2012 WL 12888673, at *7 n.20 (quoting *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986)). This forum is far more convenient than Ohio for both SME and third party witnesses, given that (1) SME has significant offices in Los Angeles, and a substantial number of employees who issue licenses for the online use of SME's sound recordings at issue here are based there; (2) the social media companies where Defendants and their influencers posted the infringing videos are based in California (TikTok's US headquarters are in Los Angeles and Instagram's are in Menlo Park); (3) certain of the influencers and/or the agencies that manage them are in California; and (4) marketing agencies that work with Defendants are in California. (Jacoby Decl. ¶ 5; Arato Decl. ¶¶ 7-23, 33-34, Exs. 5-16, 26-27; Compl. ¶¶ 12, 14). To the extent courts look to whether there is a local interest in having localized controversies decided at home (Mot. 24), this is a federal copyright action based on activity over the internet, with ample connections to California, not a localized case based on Ohio state law. Transfer is unwarranted.

## CONCLUSION

    For the foregoing reasons, SME respectfully requests that the Court deny Defendants' motion to dismiss.

Dated:        New York, New York
              October 24, 2025

                                        SHAPIRO ARATO BACH LLP


                                        By: /s/ Cynthia S. Arato
                                        Cynthia S. Arato (SBN 156856)
                                        carato@shapiroarato.com
                                        Fabien M. Thayamballi (SBN 284752)
                                        fthayamballi@shapiroarato.com
                                        Avery D. Medjuck (*pro hac vice*)
                                        amedjuck@shapiroarato.com
                                        1140 Avenue of the Americas, 17th Fl.
                                        New York, New York 10036
                                        Telephone: (212) 257-4880

                                        *Attorneys for Plaintiffs*