1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SONY MUSIC ENTERTAINMENT, et al., | Case No. 2:25-cv-07285-JC |
| Plaintiffs, | ORDER (1) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS COMPLAINT AND GRANTING PLAINTIFFS LEAVE TO AMEND; AND (2) DENYING AS MOOT DEFENDANTS' MOTION TO STAY |
| v. | |
| DESIGNER BRANDS INC., et al., | |
| Defendants. | |
| | [DOCKET NOS. 24, 30] |

## I.    SUMMARY

On August 6, 2025, Plaintiffs Sony Music Entertainment ("SME"), Sony Music Entertainment US Latin LLC, Arista Music, Arista Records, LLC, Ultra Records, LLC, Zomba Recording, LLC, Record Label, LLC, and LaFace Records, LLC (collectively, "Plaintiffs") filed a Complaint ("Comp.") with an exhibit ("Comp. Ex. A") against Designer Brands Inc. ("DBI"), DSW Shoe Warehouse, Inc. ("DSW"), Topo Athletic, LLC ("Topo") (collectively, "Defendants"), and Does 1-25.  (Docket No. 1).  Plaintiffs allege that Defendants committed copyright infringement by creating, posting and/or distributing, without authorization, at least 170 advertisements to their social media accounts incorporating about 122 copyrighted sound recordings owned and/or controlled by Plaintiffs.  (See Comp.

¶¶ 7, 45).  They also allege that Defendants committed contributory and/or vicarious copyright infringement based on, among other things, their collaboration with social media "influencers" who posted infringing advertisements on social media.  (See Comp. ¶¶ 6, 45).  Attached as Exhibit A to the Complaint is a non-exhaustive list of the sound recordings allegedly owned by Plaintiffs which Defendants allegedly infringed.  (See Comp. ¶¶ 23-24; Comp. Ex. A).

On October 7, 2025, Defendants filed a Motion to Dismiss Plaintiffs' Complaint ("Motion to Dismiss"), along with a supporting Memorandum of Points and Authorities ("MTD Memo"), a declaration of Defendants' counsel Jeff M. Barron ("Barron Decl.") with exhibits ("Barron Ex."), and declarations of DBI's corporate counsel Katherine Alfano ("Alfano Decl.") and Topo's Chief Financial Officer ("CFO") and Vice President of Operations Natalie Riley ("Riley Decl."). (Docket No. 24).  Defendants seek dismissal of the case on the grounds of (1) failure adequately to plead personal jurisdiction, pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure; (2) lack of personal jurisdiction, pursuant to Rule 12(b)(2); (3) improper venue, pursuant to Rule 12(b)(3); and (4) the first-to-file rule.  (See MTD Memo at 17-23).  Alternatively, Defendants seek to transfer the case to the Southern District of Ohio on the grounds of (a) lack of venue, under 28 U.S.C. § 1406(a); (b) the first-to-file rule; and/or (c) party or judicial convenience, under 28 U.S.C. § 1404(a).  (MTD Memo at 20-25).  On October 21, 2025, Defendants filed a Motion to Stay Pending the Court's Decision on Their Motion to Dismiss ("Motion to Stay").  (Docket No. 30).

On October 24, 2025, Plaintiffs filed an Opposition to the Motion to Dismiss ("MTD Opp.") supported by a declaration of SME's head of U.S. litigation David Jacoby ("Jacoby Decl.") with exhibits ("Jacoby Ex.") and a declaration of Plaintiffs' counsel Cynthia S. Arato ("Arato Decl.") with exhibits ("Arato Ex."). (Docket No. 31).  Plaintiffs also filed an Opposition to the Motion to Stay.  (Docket No. 32).  On November 4, 2025, Defendants filed replies to Plaintiffs' oppositions

to the Motion to Dismiss ("MTD Reply") and the Motion to Stay.  (Docket Nos. 33, 34).

On November 14, 2025, the Court submitted the Motion to Dismiss and the Motion to Stay for decision.  (Docket No. 35).

For the reasons discussed below, the Motion to Dismiss is granted in part and denied in part, the Complaint is dismissed with leave to amend, and the Motion to Stay is denied as moot.  In reaching this conclusion, the Court has considered every argument made by the parties and discusses their main contentions herein.

## II.    PERTINENT LAW

### A.    Personal Jurisdiction

Federal Rule of Civil Procedure 12(b)(2) provides for dismissal based on lack of personal jurisdiction.  In a motion challenging personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the party seeking to invoke the jurisdiction of the federal court has the burden of establishing jurisdiction exists.  See In re Boon Glob. Ltd., 923 F.3d 643, 650 (9th Cir. 2019).  "Where, as here, the defendant's motion is based on written materials rather than an evidentiary hearing, 'the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss.'"  Ranza v. Nike, Inc., 793 F.3d 1059, 1068 (9th Cir. 2015) (quoting CollegeSource, Inc. v. AcademyOne, Inc., 653 F.3d 1066, 1073 (9th Cir. 2011)), cert. denied, 577 U.S. 1104 (2016).

However, the party asserting jurisdiction "cannot simply rest on the bare allegations of its complaint."  In re Boon Glob. Ltd., 923 F.3d at 650 (quoting Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004)).  Thus, courts may consider declarations and other evidence outside the pleadings to determine whether it has personal jurisdiction.  See id.  For a motion to dismiss, "uncontroverted allegations in [plaintiff's] complaint must be taken as true[, and] '[c]onflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor.'"  Id. (quoting Schwarzenegger, 374 F.3d at 800).

On the other hand, courts "may not assume the truth of allegations in a pleading which are contradicted by affidavit." Mavrix Photo, Inc. v. Brand Techs., Inc. ("Mavrix"), 647 F.3d 1218, 1223 (9th Cir. 2011), cert. denied, 565 U.S. 1157 (2012).

Personal jurisdiction "depends only upon each defendant's relationship with the forum." Sher v. Johnson, 911 F.2d 1357, 1365 (9th Cir. 1990) (emphasis added). "The general rule is that personal jurisdiction over a defendant is proper if it is permitted by a long-arm statute and if the exercise of that jurisdiction does not violate federal due process." Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1154-55 (9th Cir. 2006) (citing Fireman's Fund Ins. Co. v. Nat'l Bank of Cooperatives, 103 F.3d 888, 893 (9th Cir. 1996)); see also Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd., 243 F. Supp. 2d 1073, 1082 (C.D. Cal. 2003) (citing Aanestad v. Beech Aircraft Corp., 521 F.2d 1298, 1300 (9th Cir. 1974)). Because California authorizes jurisdiction to the full extent of the Constitution, see Cal. Code Civ. Proc. § 410.10, the only question the Court must ask is whether the exercise of jurisdiction would be consistent with due process. Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd., 328 F.3d 1122, 1129 (9th Cir. 2003); Peterson v. Highland Music, Inc., 140 F.3d 1313, 1317 n.2 (9th Cir. 1998), cert. denied, 525 U.S. 983 (1998).

"For a court to exercise personal jurisdiction over a nonresident defendant consistent with due process, that defendant must have certain minimum contacts with the relevant forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Mavrix, 647 F.3d at 1223 (citing Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)) (internal citation and quotations omitted). There are two recognized bases for exercising personal jurisdiction over a nonresident party: (1) "general jurisdiction," which arises where the party's activities in the forum state are sufficiently "substantial" or "continuous and systematic" to justify the exercise of jurisdiction over it in all matters; and

(2) "specific jurisdiction," which arises when the party's specific contacts with the forum give rise to the claim in question.  See Helicopteros Nacionales de Columbia S.A. v. Hall, 466 U.S. 408, 414-16 (1984); Doe v. Am. Nat'l Red Cross, 112 F.3d 1048, 1050-51 (9th Cir. 1997).

As relevant here, specific jurisdiction requires that "the defendant's suit-related conduct must create a substantial connection with the forum state."[1] Walden v. Fiore, 571 U.S. 277, 284 (2014).  The Ninth Circuit follows a three-part "minimum contacts" test.  First, "[t]he non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws[.]"  Schwarzenegger, 374 F.3d at 802.  Second, "the claim must be one which arises out of or relates to the defendant's forum-related activities[.]"  Id.  Third, "the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable."  Id.  "The plaintiff bears the burden of satisfying the first two prongs of the test."  Id.  If the plaintiff succeeds in doing so, "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable."  Id. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476-78 (1985)).

The first prong of the specific jurisdiction test includes purposeful direction and purposeful availment, which are "two distinct concepts."  Schwarzenegger, 374 F.3d at 802.  Typically, the purposeful availment test is applied in contract cases, while the purposeful direction test is used in tort cases, but "this is not a rigid rule." Doe v. Deutsche Lufthansa, __ F.4th __, No. 24-2829, 2025 WL 3030423, at *5 (9th Cir. Oct. 30, 2025) (citing Schwarzenegger, 374 F.3d at 802; Impossible Foods Inc. v. Impossible X LLC, 80 F.4th 1079, 1088-89 (9th Cir. 2023), cert. denied,

---

[1] Plaintiffs' allegations rest only on specific jurisdiction.  (See Comp. ¶¶ 10-16; MTD Opp. at 11-22).

144 S. Ct. 2561 (2024)).[2]  The first prong is satisfied if either test, or some combination thereof, is met.  See Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme, 433 F.3d 1199, 1206 (9th Cir.) (the first prong "may be satisfied by purposeful availment of the privilege of doing business in the forum; by purposeful direction of activities at the forum; or by some combination thereof"), cert. denied, 547 U.S. 1163 (2006).  "At bottom, both purposeful availment and purposeful direction ask whether defendants have voluntarily derived some benefit from their interstate activities such that they 'will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts.'" Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A., 972 F.3d 1101, 1107 (9th Cir. 2020) (quoting Burger King, 471 U.S. at 474-75) (some internal quotation marks omitted); see also Burger King, 471 U.S. at 475 ("This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, . . . or of the 'unilateral activity of another party or a third person' . . . .").

The purposeful availment test is satisfied "where the defendant 'deliberately' has engaged in significant activities within a State, or has created 'continuing obligations' between himself and residents of the forum," because then the defendant "manifestly has availed himself of the privilege of conducting business" in the forum.  Burger King, 471 U.S. at 475-76 (citations omitted).  "A showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there." Schwarzenegger, 374 F.3d at 802.  Purposeful availment requires that the defendant "perform[] some type of

_____

[2]"Although the distinction between purposeful availment and direction is often a useful and appropriate doctrinal table-setting device, there's no need to adhere to [this] iron-clad doctrinal dichotomy in every case. . . .  At the end of the day, the purposeful direction and availment tests simply frame our inquiry into the defendant's 'purposefulness' vis-à-vis the forum state, ensuring that defendants are not haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." Impossible Foods Inc., 80 F.4th at 1089 (some internal quotation marks omitted).

affirmative conduct which allows or promotes the transaction of business within the forum state." Sinatra v. Nat'l Enquirer, Inc., 854 F.2d 1191, 1195 (9th Cir. 1988). "In return for these 'benefits and protections,' a defendant must – as a quid pro quo – 'submit to the burdens of litigation in that forum.'" Schwarzenegger, 374 F.3d at 802. (quoting Burger King, 471 U.S. at 476). "The Supreme Court has instructed courts to apply a 'highly realistic approach' that looks at both prior conduct and contemplated future consequences." RPB SA v. Hyla, Inc., 2020 WL 12187801, at *10 (C.D. Cal. June 9, 2020) (quoting Burger King, 471 U.S. at 478-79).

In contrast, "the purposeful direction test requires that the defendant (1) commit an intentional act, that is (2) expressly aimed at the forum state, and (3) which causes harm that the defendant knows will be suffered in the forum state." Briskin v. Shopify, Inc., 135 F.4th 739, 751 (9th Cir. 2025) (en banc) (citation omitted). In the Ninth Circuit, an intentional act is an act done with the "intent to perform an actual, physical act in the real world." Picot v. Weston, 780 F.3d 1206, 1214 (9th Cir. 2015) (quoting Schwarzenegger, 374 F.3d at 806). "While a single act can support jurisdiction, the act must first create a substantial connection with the forum. Put differently, some single or occasional acts related to the forum may not be sufficient to establish jurisdiction if their nature and quality and the circumstances of their commission create only an attenuated affiliation with the forum. A defendant's random, fortuitous, or attenuated contacts will not suffice." Axiom Foods, Inc. v. Acerchem Int'l, Inc., 874 F.3d 1064, 1068 (9th Cir. 2017) (internal citations and quotation marks omitted).

"In conducting this second prong of the [specific personal jurisdiction] inquiry, 'we consider the extent of the defendant's contacts with the forum and the degree to which the plaintiff's suit is related to those contacts.'" Impossible Foods Inc., 80 F.4th at 1091 (quoting Yahoo! Inc., 433 F.3d at 1210). "A single contact with the forum state may be sufficient to support jurisdiction if the action 'arise[s]

out of that particular purposeful contact of the defendant with the forum state.'" <u>Id.</u> (quoting <u>Yahoo! Inc.</u>, 433 F.3d at 1210). "Conversely, a stronger showing of purposeful contacts with the forum state 'will permit a lesser showing' of relatedness to the litigation." <u>Id.</u> (quoting <u>Yahoo! Inc.</u>, 433 F.3d at 1210). "That is because a defendant who has more substantially engaged with the forum – such as one who has 'continuously and deliberately exploited' the forum state's market – will more reasonably anticipate being subject to personal jurisdiction for causes of action that do not directly arise from those contacts, but that nonetheless 'relate to' them." <u>Id.</u> (quoting <u>Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.</u>, 592 U.S. 351, 364 (2021)).

If the plaintiff establishes the first two prongs of the test for specific personal juridiction, then it is the defendant's burden to "present a compelling case" that the third prong, reasonableness, has not been satisfied. <u>Schwarzenegger</u>, 374 F.3d at 802 (quoting <u>Burger King</u>, 471 U.S. at 477). "The principles governing the exercise of jurisdiction over an out-of-state party 'derive from and reflect two sets of values – treating defendants fairly and protecting "interstate federalism."'" <u>Briskin</u>, 135 F.4th at 761 (quoting <u>Ford Motor Co.</u>, 592 U.S. at 360). Consistent with these values, the third prong requires the Court to balance seven factors: (1) the "extent of the defendant's purposeful injection into the forum"; (2) the burdens on defendant from litigating in the forum state; (3) the "extent of conflict with the sovereignty of the defendant's state," (4) the forum state's "interest in adjudicating the dispute"; (5) the "most efficient judicial resolution of the controversy"; (6) the "importance of the forum to the plaintiff's interest in convenient and effective relief"; and (7) the existence of an alternative forum. <u>Ziegler v. Indian River County</u>, 64 F.3d 470, 475 (9th Cir. 1995).

## B.   Improper Venue

For copyright infringement claims, venue is proper only "in the district in which the defendant or his agent resides or may be found." 28 U.S.C. § 1400(a).

1  "Venue under 28 U.S.C. § 1400(a) is proper in any judicial district in which the

2  defendant would be amenable to personal jurisdiction if the district were a separate

3  state." Columbia Pictures Television v. Krypton Broad. of Birmingham, Inc., 106

4  F.3d 284, 289 (9th Cir. 1997) (citations and footnote omitted), rev'd on other

5  grounds sub nom., Feltner v. Columbia Pictures Television, Inc., 523 U.S. 340

6  (1998).  If the court determines that venue is improper, the court must either

7  dismiss the action or, if it is in the interests of justice, transfer the case to a district

8  or division in which it could have been brought.  28 U.S.C. § 1406(a).  Whether to

9  dismiss for improper venue or transfer to another district is within the sound

10  discretion of the district court.  King v. Russell, 963 F.2d 1301, 1304 (9th Cir.

11  1992), cert. denied, 507 U.S. 913 (1993).

12       **C.    First-to-File Rule**

13       A federal district court has discretion to dismiss, stay, or transfer a case to

14  another district court under the first-to-file rule.  Pacesetter Sys., Inc. v. Medtronic,

15  Inc., 678 F.2d 93, 94-95 (9th Cir. 1982); Alltrade, Inc. v. Uniweld Prods. Inc., 946

16  F.2d 622, 628 (9th Cir. 1991) ("The most basic aspect of the first-to-file rule is that

17  it is discretionary.").  The first-to-file rule is "a generally recognized doctrine of

18  federal comity" permitting a district court to decline jurisdiction over an action.

19  Inherent.com v. Martindale-Hubbell, 420 F. Supp. 2d 1093, 1097 (N.D. Cal. 2006)

20  (citing Pacesetter, 678 F.2d at 94-95).  The rule is primarily meant to alleviate the

21  burden placed on the federal judiciary by duplicative litigation and to prevent the

22  possibility of conflicting judgments.  Church of Scientology of Cal. v. U.S. Dep't

23  of Army, 611 F.2d 738, 750 (9th Cir. 1979) (citations omitted), overruled on other

24  grounds by Animal Legal Def. Fund v. U.S. Food & Drug Admin., 836 F.3d 987,

25  990 (9th Cir. 2016).  As such, the rule "should not be disregarded lightly."  Kohn

26  L. Grp., Inc. v. Auto Parts Mfg. Miss., Inc., 787 F.3d 1237, 1239 (9th Cir. 2015)

27  (quoting Alltrade, 946 F.2d at 625).  Courts analyze three factors in determining

28  whether to apply the first-to-file rule:  (1) the chronology of the actions; (2) the

1  similarity of the parties; and (3) the similarity of the issues.  Schwartz v. Frito-Lay

2  N. Am., 2012 WL 8147135, at *2 (N.D. Cal. Sept. 12, 2012) (citing Alltrade, 946

3  F.2d at 625).

4       A court may, in its discretion, decline to apply the first-to-file rule in the

5  interests of equity or where the balance of convenience, under 28 U.S.C. § 1404(a),

6  weighs in favor of the later-filed action.  Adoma v. Univ. of Phoenix, Inc., 711 F.

7  Supp. 2d 1142, 1149 (E.D. Cal. 2010); Ward v. Follett Corp., 158 F.R.D. 645, 648

8  (N.D. Cal. 1994).  The Ninth Circuit has cautioned that relaxing the first-to-file rule

9  on the basis of convenience is a determination best left to the court in the first-filed

10  action.  See Ward, 158 F.R.D. at 648 (citing Alltrade, 946 F.2d at 628).  Moreover,

11  exceptions to the first-to-file rule include where the filing of the first suit evidences

12  bad faith, anticipatory suits, and forum shopping.  Alltrade, 946 F.2d at 628.

13       **D.    Transfer for Convenience**

14       "For the convenience of parties and witnesses, in the interest of justice, a

15  district court may transfer any civil action to any other district or division where it

16  might have been brought or to any district or division to which all parties have

17  consented."  See 28 U.S.C. § 1404(a).  "Section 1404(a) is merely a codification of

18  the doctrine of *forum non conveniens* for the subset of cases in which the transferee

19  forum is within the federal court system; in such cases, Congress has replaced the

20  traditional remedy of outright dismissal with transfer."  Atl. Marine Const. Co. v.

21  U.S. Dist. Ct. for W. Dist. of Texas, 571 U.S. 49, 60 (2013).  Transfer of venue

22  pursuant to Section 1404(a) may be made by motion of either party or by the court

23  *sua sponte* so long as the parties are first given the opportunity to present their

24  views on the issue.  Costlow v. Weeks, 790 F.2d 1486, 1488 (9th Cir. 1986); see

25  also Pavao v. Unifund CCR Partners, 934 F. Supp. 2d 1238, 1241-42 (S.D. Cal.

26  2013) (same).

27       A court's analysis under Section 1404(a) has two steps.  First, the court must

28  decide whether the action "might have been brought" in a transferee court.  Hatch

1  v. Reliance Ins. Co., 758 F.2d 409, 414 (9th Cir.), cert. denied, 474 U.S. 1021

2  (1985).  If so, the court moves to the second step, in which it must consider

3  whether transferring the case is best for convenience and fairness to the parties and

4  the interests of justice.  In determining whether transfer is appropriate in a

5  particular case, "a court may consider:  (1) the plaintiff's choice of forum; (2) the

6  parties' contacts with the forum; (3) the contacts in the chosen forum that relate to

7  the plaintiff's claims; (4) the costs of litigation in available forums; (5) the

8  availability of compulsory process to compel the attendance of unwilling

9  witnesses; (6) access to evidence; (7) the interest in having localized controversies

10  decided in that forum; (8) the unfairness of imposing jury duty on citizens in an

11  unrelated forum; and (9) the congestion of dockets in the two districts, measured by

12  the median number of months from filing to trial."  Jones v. GNC Franchising, Inc.,

13  211 F.3d 495, 498-99 (9th Cir.), cert. denied, 531 U.S. 928 (2000).  The

14  "[w]eighing of factors for and against transfer involves subtle considerations and is

15  best left to the discretion of the trial judge."  Sparling v. Hoffman Constr. Co., 864

16  F.2d 635, 639 (9th Cir. 1988) (internal quotation marks and citation omitted),

17  abrogated on other grounds by Smith v. Spizzirri, 601 U.S. 472 (2024).  Each

18  transfer must be determined on an individualized basis.  Jones, 211 F.3d at 498.

19  **III.    DISCUSSION**

20          As indicated above, Defendants seek dismissal of this case on the grounds of

21  (1) lack of personal jurisdiction; (2) improper venue; and (3) the first-to-file rule.

22  (See MTD Memo at 17-23; MTD Reply at 1-9).  Alternatively, Defendants seek

23  transfer of the case to the Southern District of Ohio based on these same grounds,

24  or based on party or judicial convenience under 28 U.S.C. § 1404(a).  (See MTD

25  Memo at 20-25; MTD Reply at 1, 10).  For the reasons discussed below, the

26  Motion to Dismiss is granted in part and denied in part, and the Complaint is

27  dismissed with leave to amend for failure to plead sufficient grounds for the

28  Court's exercise of personal jurisdiction over Defendants.

### A.    The Complaint Fails to Provide Sufficient Jurisdictional Allegations

Plaintiffs' Complaint broadly asserts that "the Court has personal jurisdiction over each of the Defendants because the Defendants have purposefully directed their infringing activities at California, the California market, and California customers." (Comp. ¶ 10).  However, "[p]ersonal jurisdiction over *each defendant* must be analyzed separately." Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd., 328 F.3d 1122, 1130 (9th Cir. 2003) (emphasis added).  As Defendants point out, Plaintiffs' jurisdictional allegations primarily seem to refer to all three Defendants collectively, as "DSW" (see Comp. at 1, 4-5), even though DSW, DBI, and Topo are distinct entities with different businesses (see MTD Memo at 6, 12; Alfano Decl. ¶ 11; Riley Decl. ¶¶ 2-4, 8, 9, 10(d); MTD Reply at 1-2).[3]  Defendants assert that "[s]uch 'group pleading' is insufficient to establish personal jurisdiction as to any Defendant." (MTD Memo at 17 (citing In re Ethereummax Investor, 2022 WL 20804358, at *9 (C.D. Cal. Dec. 6, 2022))).

Notwithstanding the Complaint's collective reference to all three named Defendants as "DSW" (Comp. at 1, 4-5), Plaintiffs' Opposition to the Motion to Dismiss appears to treat the Complaint's jurisdictional allegations for "DSW," as referring to Defendant DSW alone (see MTD Opp. at 12-19).  If the Complaint's jurisdictional allegations for "DSW" refer to Defendant DSW alone, then – as Defendants point out– the Complaint contains *no* factual allegations to establish personal jurisdiction over Topo or DBI.  (See MTD Reply at 2 (emphasis in original)).  Plaintiffs' only jurisdictional allegations regarding Topo and DBI would then be those set forth in Plaintiffs' Opposition and supporting documents. (See MTD Opp. at 20-22).

///

---

[3]Defendant DBI apparently owns some or all of Defendants DSW and Topo.  (Alfano Decl. ¶ 2).

Given these issues, Plaintiffs' Complaint is deficient at least in its failure to allege, with sufficient clarity, facts showing that the Court has jurisdiction over each Defendant. See, e.g., Briskin, 135 F.4th at 762 ("A collectively pleaded complaint may fail to provide fair notice to a defendant, where there are multiple defendants and claims, and the complaint fails to differentiate among them."); In re Ethereummax Inv., 2022 WL 20804358, at *9 (C.D. Cal. Dec. 6, 2022) ("Plaintiffs' failure to differentiate the Executive Defendants' actions highlights their improper attempt to establish personal jurisdiction over each individual Defendant through group pleading."). Nonetheless, the Court considers whether Plaintiffs adequately demonstrate a basis for specific personal jurisdiction over each respective Defendant (DSW, Topo, and DBI) based on the facts in Plaintiffs' Complaint (understood to refer to DSW only), the Opposition to the Motion to Dismiss, and supporting declarations and exhibits.

As indicated above, specific personal jurisdiction requires that (1) "[t]he non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws"; (2) "the claim must be one which arises out of or relates to the defendant's forum-related activities"; and (3) "the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable." Schwarzenegger, 374 F.3d at 802. Plaintiffs have the burden to satisfy the first and second prongs.

For the reasons explained below as to each respective Defendant, the Complaint's jurisdictional allegations (if construed to refer only to DSW) may be adequate to satisfy personal jurisdiction as to DSW, but Plaintiffs fail to identify sufficient facts to establish personal jurisdiction over Topo or DBI. As the Complaint's jurisdictional allegations are deficient, dismissal is warranted. However, because Plaintiffs' arguments suggest they may be able to ascertain and

plead sufficient allegations to establish personal jurisdiction over all three named Defendants, as noted below, the Court grants Plaintiffs leave to amend, and grants Plaintiffs' request to conduct jurisdictional discovery (see MTD Opp. at 22-23).

### 1. DSW

Defendant DSW is a Missouri corporation with its principal place of business in Columbus, Ohio, and it operates retail stores throughout the United States. (Alfano Decl. ¶ 12). Plaintiffs contend that the Court has specific personal jurisdiction over DSW based mainly on the following allegations in the Complaint:

11.   DSW and its influencers used SME's sound recordings in unauthorized advertisements with the intent that such infringing advertisements would be streamed by as many consumers as possible in California. On information and belief, DSW and its influencers created and distributed infringing advertisements on social media platforms that were received by numerous consumers in California, resulting in rampant unauthorized reproduction, distribution, and/or public performance of SME's sounds recordings (as well as the creation of unauthorized derivative works) within California.

12.   On information and belief, DSW also directed, oversaw, contributed to and/or benefited from the unauthorized reproduction, distribution, and/or public performance of SME's sound recordings (as well as the creation of unauthorized derivative works) by DSW's influencers and other third parties in California in connection with the creation of infringing social media advertisements for DSW and the receipt of such advertisements by individuals in California.

13.   DSW and its influencers intentionally targeted California consumers by using SME's sound recordings in the infringing advertisements as an essential means of reaching, soliciting, and selling to these customers – including selling via retail locations in

California.  Indeed, DSW maintains more than 40 retails stores in California – more stores than in any other State within the United States.  On information and belief, the infringing advertisements created by DSW and its influencers successfully attracted California customers, resulting in substantial sales of DSW products, both online for delivery to California residents and in California retail locations.

14.     Moreover, . . . some of DSW's infringing advertisements specifically focused on events held in California, such as the Coachella Valley Music & Arts Festival, which has been held in Indio, California for more than twenty-five years.  Similarly, some of the influencers DSW has partnered with – and, on information and belief, paid – to post infringing advertisements are based in California.  DSW used California-based influencers and focused on California events to increase the impact on California consumers of DSW's infringing social media advertising and to promote sales within California.

15.     Additionally, until March 2025, DSW maintained in California (via a third party operator) a facility for processing, sorting, and shipping products – including, on information and belief, products DSW and its influencers marketed to consumers using advertisements that infringed SME's sounds recordings.  On information and belief, products DSW and its influencers marketed with unauthorized advertisements that used SME sound recordings were shipped, with DSW's knowledge, from a facility in California.

16.     On information and belief, DSW and its influencers' unauthorized advertisements that used SME sound recordings were stored and transmitted through computer servers located in California,

///

15

resulting in the reproduction of, and distribution and public performance through, SME sound recordings on such servers. (Comp. ¶¶ 11-16).[4]

Plaintiffs argue that these allegations satisfy the first prong of the specific contacts test for specific personal jurisdiction by showing that DSW purposely availed itself of the California forum and purposely directed its conduct at California. (See MTD Opp. at 12-16).

As indicated above, purposeful availment is satisfied "where the defendant 'deliberately' has engaged in significant activities within a State, or has created 'continuing obligations' between himself and residents of the forum," because then the defendant "manifestly has availed himself of the privilege of conducting business" in the forum. Burger King, 471 U.S. at 475-76 (citations omitted). Purposeful availment requires that the defendant "perform[] some type of affirmative conduct which allows or promotes the transaction of business within the forum state." Sinatra, 854 F.2d at 1195. Here, Plaintiffs have alleged, among other facts, that DSW operates more than forty retails stores in California (Comp. ¶ 13) and that it maintained a shipping facility in California which allegedly "distributed the products promoted by the infringing videos" (MTD Opp. at 14; see Comp. ¶ 15). Plaintiffs also allege that some of the allegedly infringing social media posts were created and uploaded *in California* by influencers working at the direction of, or in collaboration with, DSW. (See MTD Opp. at 14; Comp. ¶¶ 12, 14, 40-43, 51). Among such posts, as Defendants acknowledge, DSW "reposted," on its own social media accounts, allegedly infringing "content [which] an influencer" created in California, at the "Coachella Valley Music & Arts Festival."

---

[4]As noted above, the Complaint indicates that it refers to all Defendants collectively as DSW (Comp. at 1), which would suggest that the jurisdictional allegations quoted above are intended to refer to Defendant DSW as well as to Defendants Topo and DBI, even though Plaintiffs' Opposition to the Motion to Dismiss treats these allegations as though they refer to DSW alone (see MTD Opp. at 11-19). Regardless, the Court assumes for purpose of this analysis that the allegations refer only to DSW.

(MTD Memo at 7; see also Comp. ¶¶ 14, 51).  In these respects, DSW took deliberate action within California and thus purposely availed itself of this forum.

Plaintiffs contend, moreover, that their allegations also satisfy the test for purposeful direction.  While purposeful availment is satisfied if defendants have "taken deliberate action *within* the forum state," purposeful direction "focuses on conduct that takes place *outside* the forum state and that has effects inside the forum state."  Freestream Aircraft (Bermuda) Ltd. v. Aero L. Grp., 905 F.3d 597, 604 (9th Cir. 2018) (first emphasis added).  Specifically, purposeful direction "requires that the defendant (1) commit an intentional act, that is (2) expressly aimed at the forum state, and (3) which causes harm that the defendant knows will be suffered in the forum state."  Briskin, 135 F.4th at 751 (citation omitted).

Here, as indicated above, Plaintiffs allege that "DSW and its influencers *intentionally targeted* California consumers by using SME's sound recordings in the infringing advertisements as an essential means of reaching, soliciting, and selling to these customers – including selling via retail locations in California." (Comp. ¶ 13 (emphasis added)).  They also allege that "some of DSW's infringing advertisements specifically focused on events held in California, such as the Coachella Valley Music & Arts Festival," and that "DSW used California-based influencers and focused on California events to increase the impact on California consumers of DSW's infringing social media advertising and to promote sales within California."  (Comp. ¶ 14).

Defendants contend that Plaintiffs fail to show that the Coachella post (or any of the allegedly infringing social media posts) "was expressly aimed at California – as opposed to aimed at persons who were not at Coachella or even in California."  (MTD Memo at 18 (emphasis in original)).  However, as Plaintiffs point out, they need not show any "forum-specific focus" or "differential treatment of the forum state" by Defendants to establish personal jurisdiction.  (MTD Opp. at 17 (quoting Briskin, 135 F.4th at 757-58 & nn.15, 17)); see also Briskin, 135 F.4th

17

at 757 ("'[C]orporations whose websites exploit a national market' cannot 'defeat jurisdiction in states where those websites generate substantial profits from local consumers.'" (quoting Mavrix, 647 F.3d at 1231)).  Here, as noted above, Plaintiffs have alleged that DSW exploits the California market, operating more than forty retails stores in California and using California-based social media influencers.  (Comp. ¶ 13).  Plaintiffs additionally point out that DSW's website contains links to a "California Privacy Notice," which further supports that it targets California customers.  (See MTD Opp. at 17; Arato Exs. 17-19).  Thus, as Plaintiffs assert, "DSW's deliberate 'exploitation of the California market' is enough, regardless of California's 'share of [DSW's] overall business.'"  (MTD Opp. at 17 (quoting Mavrix, 647 F.3d at 1229)); see also Mavrix, 647 F.3d at 1229 ("[W]here, as here, a website with national viewership and scope appeals to, and profits from, an audience in a particular state, the site's operators can be said to have 'expressly aimed' at that state."); Briskin, 135 F.4th at 757 ("[A] company's internet activity may subject the company to specific personal jurisdiction in a given forum if the company 'knows – either actually or constructively' about its customer base there and 'exploits that base for commercial gain.'" (quoting Mavrix, 647 F.3d at 1230)).

Defendants also contend that Plaintiffs fail to show that the "brunt of the harm" from the social media posts "was likely to be suffered in California."  (MTD Memo at 18 (citing Dole Food Co. v. Watts, 303 F.3d 1104, 1111 (9th Cir. 2002))).  Yet, "the 'brunt' of the harm need not be suffered in the forum state."  Yahoo! Inc., 433 F.3d at 1207.  "If a jurisdictionally sufficient amount of harm is suffered in the forum state, it does not matter that even more harm might have been suffered in another state."  Id.; see also Will Co. v. Lee, 47 F.4th 917, 926 (9th Cir. 2022) ("If a Defendant's actions cause harm in multiple fora, jurisdiction is proper in any forum where a 'sufficient' amount of harm occurs, even if that amounts to only a small percentage of the overall harm caused."  (citing Yahoo! Inc., 433 F.3d at 1207)), overruled on other grounds by Briskin, 135 F.4th 739.  Thus, in Will Co. v.

Lee, the Ninth Circuit held that sufficient publication-related harms (*i.e.*, copyright infringement) had been suffered in the United States when U.S. viewers made up only 4.6% of the viewership of a foreign website.  See Will Co., 47 F.4th at 926-27; see also Keeton v. Hustler Mag., Inc., 465 U.S. 770, 780-81 (1984) (jurisdiction was proper in New Hampshire for publication-based defamation torts, even though the defendant magazine publisher sold most of its magazines elsewhere and that, as a result, "the bulk of the harm done to [the plaintiff] occurred outside New Hampshire").  Here, Plaintiffs have established jurisdictionally sufficient harm by alleging, among other facts, that DSW operates numerous California retail stores, that it used social media advertising (some created or uploaded by California-based influencers) to target California consumers, and that the social media posts "were received by numerous consumers in California, resulting in rampant unauthorized reproduction, distribution, and/or public performance of SME's sound[] recordings (as well as the creation of unauthorized derivative works) within California." (Comp. ¶¶ 11-16); see also Will Co., 47 F.4th at 926 ("A defendant causes harm in a particular forum when the 'bad acts' that form the basis of the plaintiff's complaint occur in that forum." (citing Mavrix, 647 F.3d at 1231)).

Finally, as Plaintiffs' claims in this action clearly arise out of and relate to DSW's social media posts that were allegedly directed toward and accessible to California consumers, Plaintiffs' allegations as to DSW also satisfy the second prong of the test for specific personal jurisdiction, which requires that Plaintiffs' claims "arise[] out of or relate[] to the defendant's forum-related activities." Schwarzenegger, 374 F.3d at 802; see also Mavrix, 647 F.3d at 1228 ("As to the second prong, Mavrix's claim of copyright infringement arises out of Brand's publication of the photos on a website accessible to users in the forum state.").

As Plaintiffs have identified facts to satisfy the first two prongs for specific personal jurisdiction, it is DSW's burden to "present a compelling case" that the third prong, reasonableness (*i.e.*, that the exercise of jurisdiction "comport[s] with

19

fair play and substantial justice"), has not been satisfied.  <u>Schwarzenegger</u>, 374 F.3d at 802 (quoting <u>Burger King</u>, 471 U.S. at 477).  DSW fails to do so.  <u>See, e.g.</u>, <u>Herbal Brands, Inc. v. Photoplaza, Inc.</u>, 72 F.4th 1085, 1093 (9th Cir. 2023) ("If a defendant chooses to conduct 'a part of its general business' in a particular forum, it is fair to subject that defendant to personal jurisdiction in that forum." (citing <u>Keeton</u>, 465 U.S. at 779-80)), <u>cert. denied</u>, 144 S. Ct. 693 (2024).

Accordingly, Plaintiffs' allegations in the Complaint (construed to refer solely to DSW) adequately establish personal jurisdiction over Defendant DSW.

As noted above, as Plaintiffs' Complaint fails to provide any jurisdictional allegations regarding Topo or DBI, the Court next considers whether the facts set forth in the parties other filings would, if properly pled, establish personal jurisdiction over Topo or DBI, respectively.

### 2.    Topo

Topo, "a specialty shoe company focused on selling shoes for hiking, walking and running," "was founded in Massachusetts in 2012 and has always had its headquarters in Massachusetts."  (Riley Decl. ¶¶ 2-3).  "Topo is separately incorporated and distinct from DBI and DSW," and has "its own employees, products, brands and businesses."  (Riley Decl. ¶ 8).  All of Topo's employees, including all Topo employees responsible for making or uploading posts to Topo's accounts on social media, are based in Massachusetts.  (Riley Decl. ¶ 3).  Topo "has no retail establishments of its own," as its "shoes are sold through independently owned establishments and online, including third-party stores on e-commerce platforms like Amazon.com."  (Riley Decl. ¶ 4).  Topo "manages its social media accounts through a platform operated by a third-party social media company, Sprout Social," which, according to Topo's declarant (Natalie Riley, Topo CFO and Vice President of Operations), is "primarily based in Illinois and the Sprout Social employees with whom Topo interacts are in Chicago and Illinois, not California."  (Riley Decl. ¶ 7).  Riley asserts that "Topo is not involved in any

social media posts or accounts operated by DBI or any other company owned by DBI, including DSW and the other posts identified in the Complaint that are associated with brands or companies other than Topo." (Riley Decl. ¶ 8). Moreover, according to Riley, "Topo has not contracted with or employed third parties who are in California to post content on social media on its behalf (e.g., influencers) within at least the last three years," and it "does not contract with or employ third parties to post on behalf of DBI or any other company owned by DBI, including DSW." (Riley Decl. ¶ 9).

Plaintiffs contend that these facts do not "undercut[] the Court's personal jurisdiction over Topo." (MTD Opp. at 20). To demonstrate personal jurisdiction over Topo, Plaintiffs point particularly to an allegedly infringing social media post by an influencer that, as Defendants acknowledge, "refers to a run in Joshua Tree" and identifies one of Topo's products as the "Joshua Tree shoe of choice." (MTD Opp. at 20; see Riley Decl. ¶ 6; MTD Memo at 10 n.7). Joshua Tree is located in California, and the referenced social media post apparently contains footage from there. (See Arato Decl. ¶ 28; Arato Ex. 21). Plaintiffs assert that this Joshua Tree social media post "is evidence of copyright infringement within California and [of] Topo's use of California-based influencers to target California consumers and drive California sales." (MTD Opp. at 20).

Defendants dispute this, contending that "[a] reference to a run in a [U.S.] National Park in the California desert in a social media post *by a third party* is not purposeful direction or availment by Topo." (MTD Reply at 3 (emphasis original)). On that point, Defendants reiterate that "Topo conducts its social media operations in Massachusetts, not California." (MTD Reply at 3; see Riley Decl. ¶ 3).

Indeed, Plaintiffs have failed to provide any facts plausibly to show that Topo itself was responsible for any allegedly infringing social media posts or that any such posts were directed at California. Plaintiffs assert that Topo exploits the

California market.  (MTD Opp. at 20).  As support, they point out that Topo is registered to do business in California and that it "also distributes its goods in California through more than 130 third-party retail stores."  (MTD Opp. at 20; Arato Decl. ¶¶ 29-30; Arato Exs. 22-23).  These general facts indicate that Topo sells some of its products to California customers.  Without more, however, these facts do not support an inference that Topo uses social media advertising expressly to target the California market – particularly where Defendants have expressly disclaimed that Topo does so (albeit with some ambiguity on this point)[5] and have otherwise shown that Topo has little direct contact with this forum (see MTD Memo at 19; Riley Decl. ¶¶ 2-6, 10).

Plaintiffs therefore have failed to allege a sufficient basis for the Court to exercise personal jurisdiction over Topo.  However, as Plaintiffs' contentions reasonably suggest the possibility that Topo has engaged in suit-related conduct directed toward this forum, Plaintiffs will be permitted to conduct jurisdictional discovery and to file a First Amended Complaint with additional jurisdictional allegations corresponding to Topo.  See Butcher's Union Loc. No. 498, United Food & Com. Workers v. SDC Inv., Inc., 788 F.2d 535, 540 (9th Cir. 1986) (trial court "has broad discretion to permit or deny discovery," and it "should ordinarily be granted where 'pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary'" (citation omitted)).

---

[5]In addition to asserting that Topo and DBI "have no contacts [with California] that relate in any way to the accused social media posts or Plaintiffs' allegations and claims," they also state that "[n]either Topo nor DBI has any social media presence in California or any interest served by targeting California *at the exclusion of the rest of the country*," and that Topo's social media "targets a *nationwide* market with the assistance of a third-party platform based in Chicago."  (MTD Memo at 19 (citing Alfano Decl. ¶¶ 8-10; Riley Decl. ¶¶ 2-6, 9, 10)) (second emphasis in original)).  As discussed above, the purposeful direction test may be satisfied by conduct that targets a national market, and it does not require that the conduct had a forum-specific focus.  See Briskin, 135 F.4th at 757; Mavrix, 647 F.3d at 1229.  As phrased, Defendants' averments thus still suggest the possibility that Topo used third-party social media advertising (perhaps including the Joshua Tree post) purposely to target California consumers as part of the national market for its goods.

### 3. DBI

DBI is an Ohio corporation with its principal place of business in Columbus, Ohio. (Alfano Decl. ¶ 2). Although DBI "directly or indirectly owns all or a portion of companies that sell footwear and accessories," including DSW and Topo, DBI "does not . . . sell footwear or accessories itself." (Alfano Decl. ¶¶ 2-3). DBI "owns no retail establishments" and "does not advertise or sell products online, either directly or through intermediaries (e.g., Amazon.com)." (Alfano Decl. ¶ 3). "DBI instead generally functions as a holding entity and provides corporate services to its direct and indirect subsidiaries, which include not only [DSW] and [Topo] but also other entities." (Alfano Decl. ¶ 3). DBI "has no offices, stores, warehouses or other establishments in California." (Alfano Decl. ¶ 8).

Moreover, according to DBI's declarant (DBI's senior associate corporate counsel, Katherine Alfano), "DBI does not *generally* post to social media in support of products offered by its direct or indirect subsidiaries," and "DBI does not *generally* engage with influencers or other third parties to promote products, events or services, and there are no such agreements *currently in effect*." (Alfano Decl. ¶ 4 (emphases added)). Alfano asserts that "DBI does not contract with or employ third parties to post either on its behalf or on behalf of its subsidiaries (*e.g.*, influencers), including but not limited to DSW and Topo." (Alfano Decl. ¶ 9). DBI also "does not own or post to any of the social media accounts" listed in the Complaint, except for one – an Instagram Story from February 14, 2023, attributed to DBI, which Defendants assert "does not concern, relate to, or target anyone in California." (MTD Memo at 11; Alfano Decl. ¶¶ 5, 7; see Comp. Ex. A, ¶ 19).

Plaintiffs assert that "[i]t is irrelevant that DBI is responsible for only one of the allegedly infringing posts or that this post contains no California content and was not created or uploaded in California." (MTD Opp. at 21 (citing Alfano Decl. ¶¶ 7, 10)). They contend that DBI is subject to personal jurisdiction "for exploiting

this post via its own social media account." (MTD Opp. at 21 (citing Comp. ¶¶ 11-12)). That is not quite accurate, however. For DBI to be subject to personal jurisdiction in California, Plaintiffs must show that DBI's "suit-related conduct . . . create[d] a substantial connection" with California. Walden v. Fiore, 571 U.S. at 284.

Plaintiffs fail to do so. Instead, they dispute Defendants' claim that DBI does not contract with, employ, or use social media influencers. (See MTD Opp. at 21-22; Alfano Decl. ¶¶ 9-10). Plaintiffs point out, for example, that DBI's own website "contains an entire page devoted to 'Influencer and Marketing Partnerships' and that page says DBI 'partners with select influencers.'" (MTD Opp. at 21-22 (citing Comp. ¶ 38 & n.8)). Plaintiffs further point out that "a former employee of DBI, currently employed by DSW, boasts on her LinkedIn that, while a 'Brand Marketing Coordinator' at DBI, she '[e]xecuted a Spring 2024 influencer campaign resulting in enhanced brand awareness with 425,000 impressions and a total engagement of 84% across five influencers.'" (MTD Opp. at 22 (citing Arato Decl. ¶ 31; Arato Ex. 24 at 152)). Moreover, Plaintiffs argue that the phrasing of DBI's statements that it "does not *generally*" use influencers (Alfano Decl. ¶¶ 4, 10(d) (emphasis added)) leaves open the suggestion that it does *sometimes* use them (MTD Opp. at 21). However, even if these observations raise the possibility that DBI is more involved in social media advertising than Defendants have suggested, Plaintiffs still fail to provide any facts showing that DBI purposely directs any allegedly infringing conduct *at California*.

Plaintiffs dispute DBI's assertion that it is merely a holding company that does not directly sell products. (MTD Opp. at 22). Plaintiffs contend that this is undermined by the fact that DBI "paid nearly $1 million in income tax to California in 2023, during the time of the infringements." (MTD Opp. at 22 (citing Arato Ex. 25 at 253)). Plaintiffs additionally suggest that DBI is "cagey" regarding whether it uses California warehouses for shipping products. (MTD Opp. at 22 (citing

Alfano Decl. ¶¶ 8, 10(e))).  Plaintiffs contend that DBI's use of California warehouses is evidenced by its SEC Form 10-K which reports that DBI's "inventory is shipped" to "distribution center[s]," including the facility "located in California" at the time of the infringements, "where the inventory is then processed" and shipped "on to the stores."  (MTD Opp. at 22 (citing Arato Ex. 25 at 164)).  Defendants assert, however, that these records cited by Plaintiffs are both *consolidated* filings that reflect the circumstances of DBI *and* its various subsidiaries, and thus cannot be used to show that DBI itself pays California taxes or uses a California warehouse.  (MTD Reply at 5-6; <u>see</u> Arato Ex. 25 at 160 ("[A]ll references to 'we,' 'us,' 'our,' 'Designer Brands,' 'Designer Brands, Inc.' or the 'Company' . . . mean Designer Brands Inc. and its subsidiaries.")).

Furthermore, even if DBI *had* paid California taxes or used a California warehouse, such facts alone would not demonstrate that DBI directed any of the alleged infringing conduct at California.  As Plaintiffs have not shown that DBI has contacts with California that relate to Plaintiffs' claims, they fail to establish a basis for the exercise of personal jurisdiction over DBI.  Nonetheless, as with Topo, Plaintiffs will be permitted to conduct jurisdictional discovery and to file a First Amended Complaint with additional jurisdictional allegations corresponding to DBI.

## B. Dismissal or Transfer for Improper Venue Is Not Warranted at This Juncture

As indicated above, venue for copyright infringement claims "is proper in any judicial district in which the defendant would be amenable to personal jurisdiction if the district were a separate state."  <u>Columbia Pictures Television</u>, 106 F.3d at 289.  The "venue requirements must be satisfied for each separate cause of action and as to each defendant."  <u>Gamboa v. USA Cycling, Inc.</u>, 2013 WL 1700951, at *4 (C.D. Cal. Apr. 18, 2013).  In this case, where it remains unclear whether certain Defendants are amenable to personal jurisdiction here, and the

circumstances warrant giving Plaintiffs a further opportunity to develop and address that issue, it is premature to determine whether venue is proper. Defendants' argument for dismissal or transfer on this basis is therefore denied without prejudice.

### C.   The First-to-File Rule Does Not Apply

#### 1.   Pertinent Facts

This present action relates to two other cases currently pending in the Southern District of Ohio:  <u>Atlantic Recording Corp., et al. v. Designer Brands Inc., et al.</u>, No. 2:25-cv-00479-MHW-EPD (S.D. Ohio) ("Warner Action"); and <u>Designer Brands Inc., et al. v. Sony Music Entertainment, et al.</u>, No. 2:25-cv-00765-MHW-EPD (S.D. Ohio) ("Declaratory Judgment Action") (collectively, the "Ohio cases").

The Warner Action was filed on May 1, 2025, against the same Defendants as in this case (*i.e.* DBI, DSW, and Topo), by a group of music labels and publishers led by Warner Music Group (collectively, "Warner").  Warner subsequently filed a First Amended Complaint on July 1, 2025.  (Warner Action, Docket No. 19).  Like the present action, Warner has alleged that Defendants' social media posts infringed Warner's copyrights and has asserted essentially the same three causes of action against Defendants that Plaintiffs assert here:  direct copyright infringement, indirect infringement, and vicarious infringement.  (See Warner Action Docket Nos. 1, 19).  Warner's First Amended Complaint includes a table (Schedule A), which identifies the musical recordings and compositions at issue as well as the allegedly infringing posts.  (Warner Action, Docket No. 19, Schedule A).  The Warner Action is currently in the fact discovery phase.  (Barron Decl. ¶ 2).

According to Defendants, Warner's filing of the case "triggered multiple inquiries from other labels and music publishers" regarding whether their copyrights were also implicated by the same social media posts at issue in the

Warner Action. (MTD Memo at 5, 21; see Barron Exs. B-1, B-2, E, F). SME was among the companies contacting Defendants. Specifically, on May 9, 2025, SME first contacted DSW about SME's infringement claims. (Jacoby Decl. ¶ 6; Jacoby Ex. A). SME emailed a former outside counsel for DSW and asked to be put "in touch with counsel for DSW in connection with [SME's] infringement claims." (Jacoby Ex. A). SME stated it "would like to avoid litigation," though it "reserve[d] all of [its] rights and remedies in connection with [its] claims." (Jacoby Ex. A). After being connected with retained counsel for Defendants, SME sought to enter a tolling agreement, and the parties spent the next several weeks engaging in negotiations regarding the same. (See Jacoby Ex. B at 7-15). Both parties indicated that they hoped to resolve the dispute without resorting to formal litigation. (Jacoby Ex. B). On June 3, 2025, SME reiterated that "rather than file [a] lawsuit, SME would much rather see if this can be resolved out of court," while adding that it "continue[d] to reserve its rights, remedies, and defenses" and "cannot promise [Defendants] that SME will continue to refrain from moving forward." (Jacoby Ex. B at 11-12).

On June 11, 2025, Defendants proposed "a settlement discussion schedule," including a schedule for mediation to occur at the end of July. (Jacoby Ex. C at 21). SME responded that the proposed schedule was acceptable. (Jacoby Ex. C at 20). On June 25, 2025, Defendants told SME that they "would like to find a constructive procedure for . . . settlement discussions" and proposed a "global mediation" to occur "in late August or September," involving SME as well as other, unrelated music companies with similar infringement claims against Defendants. (Jacoby Ex. D at 27-28). On July 9, at 3:50 p.m., SME's counsel responded as follows:

> SME is not interested in an industry wide mediation. I should also
> point out that SME is not a publisher, and it owns or controls, or has
> the right to assert claims covering, 100% of its works. [¶] We [also]

> have a toll[ing] [agreement] waiting to be executed by your client,
> which apparently is not happening.  In addition, we asked you
> whether DSW was willing to make an information exchange mutual
> and provide certain information, to which you have not responded.
> [¶] Accordingly, SME plans to move ahead with preparing a
> complaint.

(Jacoby Ex. D at 26).  Defendants' counsel responded soon after – at 6:20 p.m. that same day – by disputing SME's suggestion that Defendants had not agreed to tolling or an exchange of information, and also insisting on Defendants' preference for global mediation.  (Jacoby Ex. D at 25).  Specifically, on the latter point, Defendants' counsel wrote:

> I've tried to offer a pathway to a settlement conversation here, but it
> feels like you're standing on form.  Indeed, it feels like you waited
> two weeks only to tell me that you're moving forward with a
> complaint.  [¶]  I continue to believe that a broad settlement
> discussion is the way to go here, and I will continue to work in that
> direction, irrespective of whether litigation starts.

(Jacoby Ex. D at 25).

Roughly thirty minutes later, at 6:52 p.m., Defendants filed their Declaratory Judgment Action against SME and others in the Southern District of Ohio, seeking among other things, a declaration that Defendants did not infringe any valid copyright owned in whole or in part by SME or four other music labels or publishers (Sony Music Publishing (US) LLC, UMG Recordings, Inc., Universal Music Publishing (US) LLC, and BMG Rights Management (US) LLC).  (See Arato Ex. 1; Barron Ex. B).

Yet, Defendants did not serve their declaratory judgment complaint on SME until August 8, 2025, two days after Plaintiffs filed their Complaint in this Court, on August 6, 2025.  (See Docket No. 1; Barron Ex. F; Declaratory Judgment

28

Action, Docket No. 10).  Plaintiffs' Complaint in this case asserts copyright infringement claims against Defendants based on some of the same allegedly infringing social media posts at issue in the Warner Action.[6]  (Compare Docket No. 1-1 with Warner Action, Docket No. 19-1).

On October 20, 2025, SME filed a motion to dismiss the Declaratory Judgment Action against it on the grounds that the district court in Ohio lacks personal jurisdiction over SME, that the Declaratory Judgment Action is an improper anticipatory action, and that DSW, DBI, and Topo failed to plead the allegedly non-infringing posts or copyrighted works at issue.  (See Arato Ex. 4; Declaratory Judgment Action, Docket No. 28).  Such motion to dismiss remains pending.  (See generally Declaratory Judgment Action Docket).

On November 10, 2025, Defendants (DSW, DBI, and Topo) filed a First Amended Complaint in the Declaratory Judgment Action which adds as new defendants therein several SME-related companies – Sony Music Entertainment US Latin LLC, Arista Music; Arista Records, LLC; Ultra Records, LLC; Zomba Recording LLC, Records Label, LLC, and Laface Records, LLC – that are the other Plaintiffs in this action here.  (See Declaratory Judgment Action, Docket No. 37).

## 2.    Analysis

Defendants argue that the "first-to-file rule" requires dismissal of this case.  (See MTD Memo at 20-21).  As indicated above, courts analyze three factors in determining whether to apply the first-to-file rule:  (1) the chronology of the actions; (2) the similarity of the parties; and (3) the similarity of the issues.  Schwartz, 2012 WL 8147135, at *2 (citing Alltrade, 946 F.2d at 625).  Defendants

---

[6]Those social media posts are at issue in both this case and the Warner Action because the posts allegedly contain recordings of songs for which the plaintiffs in the Warner Action own the rights to the musical *compositions*, whereas Plaintiffs in this case own the rights to the sound *recordings* of those songs.  Under the Copyright Act, "[s]ound recordings and musical compositions are separate works with their own distinct copyrights."  Williams v. Gaye, 895 F.3d 1106, 1121 (9th Cir. 2018); see also 17 U.S.C. §§ 102, 114, 115.  Thus, Plaintiffs here maintain that they own or control "the entirety of the United States copyrights to the sound recordings" at issue in this case, and "[n]o other person of entity owns a fractional or concurrent share of these rights."  (Jacoby Decl. ¶ 4; MTD Opp. at 4).

contend that all three of these factors favor application of the first-to-file rule here because their complaint in the Declaratory Judgment Action (1) was filed before Plaintiffs' Complaint in this Court; (2) includes the parties that are in this action;[7] and (3) concerns the alleged infringement by Defendants (DSW, DBI, and Topo) of the same copyrights at issue in this case.[8]  (MTD Memo at 20-21).

Plaintiffs contend, however, that the Declaratory Judgment Action is "a textbook example of an improper anticipatory filing," filed in bad faith, which counsels against applying the first-to-file rule.  (See MTD Opp. at 1, 6-11).  "Anticipatory suits are disfavored because they are an aspect of forum-shopping." Intersearch Worldwide, Ltd. v. Intersearch Grp., Inc., 544 F. Supp. 2d 949, 960 (N.D. Cal. 2008) (quoting Mission Ins. Co. v. Puritan Fashions Corp., 706 F.2d 599, 602 n.3 (5th Cir. 1983)).  "A suit is 'anticipatory' for the purposes of being an exception to the first-to-file rule if the plaintiff in the first-filed action filed suit on receipt of specific, concrete indications that a suit by the defendant was imminent." Intersearch Worldwide, 544 F. Supp. 2d at 960 (quoting Guthy-Renker Fitness, L.L.C. v. Icon Health & Fitness, Inc., 179 F.R.D. 264, 271 (C.D. Cal. 1998)).  In determining whether the anticipatory-suit exception should apply, courts typically consider "(1) whether the first suit was a declaratory judgment action; (2) whether the first suit short-circuited ongoing and potentially-fruitful settlement talks; (3) whether the first-filed plaintiff misrepresented its intentions in order to gain filing priority; (4) and whether the burden of proof or applicable law would change depending on the forum."  HiTherm, LLC v. Victaulic Co., 2022 WL 19239750, at *2 (C.D. Cal. July 7, 2022) (citing Key Equip. Fin. v. Fed. Express Corp., 2014 WL

---

[7]At the time the Motion to Dismiss was filed herein, the Declaratory Judgment Action included SME as a defendant, but did not include the other SME-related companies that are Plaintiffs here – i.e., Sony Music Entertainment US Latin LLC, Arista Music, Arista Records, LLC, Ultra Records, LLC, Zomba Recording, LLC, Record Label, LLC, and LaFace Records, LLC.  (See Declaratory Judgment Action, Docket No. 1).  But as noted above, on November 10, 2025, Defendants filed a First Amended Complaint in the Declaratory Judgment Action which adds these other parties as defendants in that case.  (See Declaratory Judgment Action, Docket No. 37).

[8]The Warner Action, on the other hand, does not involve SME or any of the Plaintiffs herein.

12966963, at *6 (C.D. Cal. Dec. 18, 2014)).  "But, far and away, the most important consideration is whether the plaintiff in the first suit jumped ahead once the defendant indicated an intent to sue and set a reasonably firm deadline for pre-filing resolution."  Key Equip. Fin., 2014 WL 12966963, at *6.

Here, a review of the relevant considerations suggests that the anticipatory suit exception applies.  In particular, as Plaintiffs point out, Defendants filed their Declaratory Judgment Action abruptly, roughly three hours after SME expressly told Defendants that it "plan[ned] to move ahead with preparing a complaint."  (See Jacoby Ex. D at 26; Arato Ex. 1).  Although Defendants contend that they "had obviously been preparing their declaratory judgment action for some time prior to Plaintiffs' threat" (MTD Reply at 8), it is nonetheless significant that Defendants did not file the case until that moment, when Plaintiffs had just indicated their intent to "move ahead" with a lawsuit.[9]  Moreover, unlike Plaintiffs, Defendants gave Plaintiffs no prior indication that they intended to file their suit, and the filing occurred only about thirty minutes after Defendants' counsel told SME:  "I continue to believe that a broad settlement discussion is the way to go here, and I will continue to work in that direction, irrespective of whether litigation starts."  (Jacoby Ex. D at 25).  In these circumstances, notwithstanding that Defendants may have had good reasons to want to litigate the matter in the Southern District of Ohio, Defendants' timing is a fairly clear indication that their Declaratory Judgment Action is an anticipatory suit that counsels against dismissing or staying this case under the first-to-file rule.  See, e.g. Intersearch Worldwide, 544 F. Supp. 2d at 960 ("A suit is 'anticipatory' for the purposes of being an exception to the first-to-file rule if the plaintiff in the first-filed action

---

[9]Defendants also contend that "it is not as though Defendants beat Plaintiffs to the courthouse door by minutes, hours or days – the normal case of an anticipatory filing."  (MTD Reply at 8).  But while it is true that Plaintiffs did not end up filing their Complaint in this Court until about a month later, that is insignificant.  At the time, SME's clear statement of intent on July 9, 2025, at 3:50 p.m. – that it "plan[ned] to move ahead with preparing a complaint" (Jacoby Ex. D at 26) – reasonably would have conveyed to Defendants that a suit was imminent, and the timing of Defendants' filing supports that impression.

filed suit on receipt of specific, concrete indications that a suit by the defendant was imminent." (quoting Guthy-Renker Fitness, 179 F.R.D. at 271)); see also Jemella Grp. Ltd v. Living Proof Inc., 2013 WL 12116392, at *6 (C.D. Cal. Dec. 23, 2013) (anticipatory suit exception applied where defendant in second suit "did not inform [plaintiffs] that it was no longer interested in negotiations, in spite of the fact that it knew of Plaintiffs' intention to litigate in California if settlement discussions failed," and defendant "did not warn either [Plaintiffs] that it intended to file suit in a different forum"); Wyrgatsch v. Hasbro, Inc., 2023 WL 9419156, at *4 (C.D. Cal. Dec. 1, 2023) (finding same, and noting that it was "certainly suspect that Defendants never informed Plaintiff that they were no longer interested in settlement discussions or that they intended to file the [declaratory judgment action]"); Xoxide, Inc. v. Ford Motor Co., 448 F. Supp. 2d 1188, 1193 (C.D. Cal. 2006) ("'[W]here . . . a declaratory judgment action has been triggered by a cease and desist letter' that both seeks settlement and notifies the party of the possibility of litigation upon collapse of negotiations, 'equity militates in favor of allowing the second-filed action to proceed to judgment rather than the first.'" (quoting Z-Line Designs, Inc. v. Bell'O Int'l LLC, 218 F.R.D. 663, 667 (N.D. Cal. 2003))).

Defendants argue that their Declaratory Judgment Action does not implicate the anticipatory suit exception because Defendants assertedly filed it due to the Warner Action against them, which had prompted "the need [for Defendants] to join SME and the other labels with Warner's pre-existing claims because of the commonality between the accused works, songs, and posts." (MTD Memo at 21). Defendants argue that these circumstances gave them "a 'preexisting motive' to seek relief beyond a declaratory judgment action." (MTD Memo at 21 (quoting HiTherm, 2022 WL 19239750, at *3)). In HiTherm, the district court determined that the defendant's first-filed declaratory judgment case was not "anticipatory" in part because the defendant "had a 'preexisting motive' to seek relief beyond a declaratory judgment action, namely to obtain approximately $1.5 million in funds

it [had] advanced to [the plaintiff]," which the defendant sought in claims for damages and other relief in addition to its claims for declaratory relief.  See HiTherm, 2022 WL 19239750, at *3.  There is nothing analogous here in Defendants' Declaratory Judgment Action; they had no "'preexisting motive' to seek relief *beyond a declaratory judgment action*" to resolve their copyright disputes with various parties.  Id. (emphasis added).  Moreover, even to the extent that Defendants may have had other motives for filing their Declaratory Judgment Action, the nature and timing of that filing strongly suggests that, above all else, it was motivated by Defendants' wish to beat Plaintiffs in a "race to the courthouse door," and it is therefore an *anticipatory* suit.  See Guthy-Renker Fitness, 179 F.R.D. at 271 ("[B]y recognizing this exception to the first-to-file rule, courts seek to eliminate the race to the courthouse door in an attempt to preempt a later suit in another forum." (citing Nw. Airlines v. Am. Airlines, 989 F.2d 1002, 1007 (8th Cir. 1993))).

Defendants also argue that the first-to-file rule should apply to their Declaratory Judgment Action because their filing of the case did not "short-circuit[] ongoing and potentially-fruitful settlement talks."  (MTD Memo at 22); see HiTherm, 2022 WL 19239750, at *2.  According to Defendants, "[t]he parties had been trading positions for months, and the final exchanges reflected SME's refusal to participate in a global mediation and determination to go it alone."  (MTD Memo at 22; see Barron Ex. F).  Defendants also assert that, even after they filed the Declaratory Judgment Action, they still "sought to negotiate a resolution of these disputes" with SME and the other labels and publishers, and they resorted to serving their complaint on SME only after Plaintiffs filed their Complaint in this case.  (MTD Memo at 6).  Yet, notwithstanding these considerations, Defendants' abrupt, surreptitious filing of the case still suggests that they prioritized ensuring that any litigation of the matters would occur in their chosen forum.

1
2
3

Accordingly, dismissal or transfer of this action is not warranted under the first-to-file rule because Defendants' first-filed Declaratory Judgment Action is an anticipatory suit.

4
5

**D.     Transfer for Convenience Under 28 U.S.C. 1404(a) Is Not Warranted at This Juncture**

6
7
8
9
10
11
12
13
14
15
16
17
18

Defendants argue that if the Court finds dismissal is not warranted, it should transfer this case to the Southern District of Ohio for party and judicial convenience pursuant to 28 U.S.C. § 1404(a), which provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." (See MTD Memo at 23-25). "Section 1404(a) requires the court to make a threshold determination of whether the case could have been brought where the transfer is sought.  If venue is appropriate in the alternative venue, the court must weigh the convenience of the parties, the convenience of the witnesses, and the interest of justice." California v. Bureau of Land Mgmt., 286 F. Supp. 3d 1054, 1059 (N.D. Cal. 2018) (citing 28 U.S.C. § 1404(a)).  "A motion for transfer lies within the broad discretion of the district court and must be determined on an individualized basis." Jones, 211 F.3d at 498.

19
20
21
22
23
24
25
26
27
28

However, as Plaintiffs point out, the issue of whether transfer is warranted based on the respective convenience of the two courts should be addressed in the first-filed action – i.e., the Declaratory Judgment Action, in the Southern District of Ohio – and not this one. See Alltrade, 946 F.2d at 628 ("As for the respective convenience of the two courts, [']normally [this argument] should be addressed to the court in the first-filed action.  Apprehension that the first court would fail to appropriately consider the convenience of the parties and the witnesses should not be a matter for our consideration. . . .  The court in the second-filed action is not required to duplicate this inquiry.[']" (quoting Pacesetter, 678 F.2d at 96)); Prohbtd Media, Inc. v. VMR Prods., LLC, 2018 WL 6012224, at *7 (C.D. Cal. Nov. 13,

2018) ("<u>Alltrade</u> counsels against transfer under Section 1404 until the court in the [first-filed] Florida Action has had an opportunity to address issues of convenience."); <u>Gordon v. Digital Basement, LLC</u>, 2015 WL 13915248, at *5 (C.D. Cal. Apr. 1, 2015) (finding that the anticipatory filing exception to the first-to-file rule applied, but declining to consider alternative argument for transfer under *forum non conveniens* because that issue should be addressed in first-filed action). As noted above, SME (the only Plaintiff herein that was then named as a defendant in the Declaratory Judgment Action) filed a motion to dismiss the claims against it in the Declaratory Judgment Action, and the district court for the Southern District of Ohio has not yet ruled on the issues raised therein.[10] Once that court has done so, it may be appropriate for this Court to revisit this issue, and Defendants may renew their Section 1404(a) motion at that time, if warranted by the circumstances.[11] See also <u>Brighton Collectibles, Inc. v. Coldwater Creek, Inc.</u>, 2006 WL 4117032, at *4 (S.D. Cal. Nov. 21, 2006) (finding that the anticipatory filing exception to the first-to-file rule applied, but concluding that it was "premature" to decide whether to transfer the case to Idaho "[g]iven the early stage of the pleadings, and the pending motion to dismiss in the [first-filed] Idaho suit"; noting that "[i]f . . . the motion to dismiss is denied in the Idaho suit, such that two

---

[10]As noted above, Defendants herein (DSW, Topo, and DBI) very recently filed a First Amended Complaint in the Declaratory Judgment Action which adds claims against the other SME-related companies (and thus includes all Plaintiffs in this case as defendants in that case), among other changes. (See Declaratory Judgment Action, Docket No. 37). Although that filing may moot SME's pending motion to dismiss that case, it seems unlikely to have resolved all the issues raised in the motion.

[11]Although Plaintiffs contend that the Court *cannot* transfer this case to Ohio "because the Ohio court lacks personal jurisdiction over [Plaintiffs] and this action thus could not have been brought there" (MTD Opp. at 24), "[t]here is no requirement under § 1404(a) that a transferee court have jurisdiction over the plaintiff or that there be sufficient minimum contacts with the plaintiff; there is only a requirement that the transferee court have jurisdiction over the defendants in the transferred complaint." Hope v. Lunarlandowner.com, Inc., 2022 WL 597579, at *3 (E.D. Cal. Feb. 28, 2022) (quoting In re Genentech, Inc., 566 F.3d 1338, 1346 (Fed. Cir. 2009)); see also F.T.C. v. Watson Pharm., Inc., 611 F. Supp. 2d 1081, 1090 (C.D. Cal. 2009) ("[I]t is not necessary for the transferee forum to have personal jurisdiction over the plaintiff."); Peregrine Semiconductor Corp. v. RF Micro Devices, Inc., 2012 WL 2068728, at *3 (S.D. Cal. Jun. 8, 2012) (same); KCC Class Action Servs., LLC v. Aetna, Inc., 2018 WL 5094907, at *6 n.3 (C.D. Cal. Apr. 20, 2018) (same). What matters, rather, is that Plaintiffs could have originally filed the case in that forum, which requires that it have personal jurisdiction over *Defendants*.

suits regarding similar issues are pending in separate districts, this Court will be receptive to reconsidering a motion to transfer this suit based on the factors specified by section 1404(a)").  At that time, moreover, this Court's consideration of the matter may benefit from further development of certain facts that are pertinent to the Section 1404(a) analysis, including what contacts the respective parties have with this forum and whether any such contacts relate to Plaintiffs' claims – matters which remain somewhat unclear at this juncture, for the reasons addressed above.  See Jones, 211 F.3d at 498 (listing pertinent factors for analysis under Section 1404(a) to include "the respective parties' contacts with the forum" and "the contacts relating to the plaintiff's cause of action in the chosen forum").  Defendants' argument for transfer on this basis is therefore denied without prejudice.

**IV.  ORDERS**

IT THEREFORE ORDERED:  (1) Defendants' Motion to Dismiss is granted in part and denied in part:  (a) the Motion to Dismiss is granted to the extent it seeks dismissal of the Complaint for failure to provide sufficient allegations regarding personal jurisdiction against Defendants and the Complaint is dismissed with leave to amend on that basis; and (b) the Motion to Dismiss is otherwise denied without prejudice; (2) Plaintiffs' request to conduct jurisdictional discovery is granted; (3) Plaintiffs shall file a First Amended Complaint no later than sixty (60) days after the date of this Order;[12] (4) Defendants shall file a response to the

///

///

///

///

---

[12]Plaintiffs are cautioned that the failure timely to file a First Amended Complaint may result in the dismissal of this action for failure to provide sufficient allegations regarding personal jurisdiction against Defendants, failure to comply with the instant Order, and/or the failure to prosecute.

First Amended Complaint within fourteen (14) days of the filing thereof; and

(5) Defendants' Motion to Stay is denied as moot.

      IT IS SO ORDERED.

DATED:  November 17, 2025

                             /s/

                         Honorable Jacqueline Chooljian
                         UNITED STATES MAGISTRATE JUDGE