REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

CYNTHIA S. ARATO (SBN 156856)
carato@shapiroarato.com
FABIEN M. THAYAMBALLI (SBN 284752)
fthayamballi@shapiroarato.com
SHAPIRO ARATO BACH LLP
1140 Avenue of the Americas, 17th Fl.
New York, New York 10036
Telephone: (212) 257-4880

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

SONY MUSIC ENTERTAINMENT, SONY MUSIC ENTERTAINMENT US LATIN LLC, ARISTA MUSIC, ARISTA RECORDS, LLC, ULTRA RECORDS, LLC, ZOMBA RECORDING, LLC, RECORDS LABEL, LLC, and LaFACE RECORDS, LLC,

*Plaintiffs*,

v.

DESIGNER BRANDS INC., DSW SHOE WAREHOUSE, INC., TOPO ATHLETIC, LLC, and DOES 1-25,

*Defendants*.

Case No. 2:25-cv-07285-BFM

**POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL**

[*Notice of Motion, Declarations, and [Proposed] Order Filed concurrently herewith*]

Judge: Hon. Brianna F. Mircheff
Hearing Date: August 25, 2026
Hearing Time: 10:00 a.m.
Courtroom: 780

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .......... ii

INTRODUCTION .......... 1

BACKGROUND .......... 1

A. The Alleged Infringement .......... 1

B. DBI's Refusal To Provide Jurisdictional Discovery .......... 2

C. DBI's Marketing Activities .......... 2

D. DBI's Marketing Executives: Julie Roy And Kelly Ballou .......... 4

ARGUMENT .......... 7

CONCLUSION .......... 10

# TABLE OF AUTHORITIES

**Cases** **Page**

*Fed. Trade Comm'n v. Uber Techs., Inc.*, 351 F.R.D. 150 (N.D. Cal. 2026) ........ 8

*Kadrey v. Meta Platforms, Inc.*, No. 23-CV-03417-VC (TSH), 2025 WL 240847 (N.D. Cal. Jan. 8, 2025) ........ 2

*United States v. Int'l Union of Petroleum & Indus. Workers, AFL-CIO*, 870 F.2d 1450 (9th Cir. 1989) ........ 9

**Rule**

Fed. R. Civ. Proc. 26 ........ 8

## INTRODUCTION

Plaintiffs (together, "SME") respectfully submit this Memorandum of Points and Authorities in support of SME's motion to compel Defendant Designer Brands Inc. ("DBI") to include DBI executives Julie Roy and Kelly Ballou as custodians for jurisdictional document discovery and, accordingly, to search their emails and files. Publicly available information identifies Ms. Roy and Ms. Ballou as DBI's primary marketing executives during the relevant period. Their email accounts are therefore likely to contain documents and communications concerning DBI's efforts to target the California market—a key inquiry for personal jurisdiction. As their roles differ from the role of DBI's sole current custodian, its Director of Communications Renee Reinke, Ms. Roy and Ms. Ballou are likely to have additional unique documents. Requiring DBI to search two additional custodians, for a total of just three custodians, is proportional to the needs of the case and reasonable under the circumstances.

## BACKGROUND

### A. The Alleged Infringement

This case concerns Defendants' infringing use of SME sound recordings in social media posts to advertise Defendants' brands and products. Defendant DBI is the corporate parent of Defendants DSW Shoe Warehouse, Inc. (a shoe retailer) and Topo Athletic, LLC (a shoe brand). DBI also owns its own shoe brands,[1] which it markets and promotes. In this action, SME alleges DBI posted a social media advertisement on Instagram using SME's recording of "CUFF IT" by Beyoncé, one of the most popular recording artists in the world. (*See* Complaint Ex. A, Dkt. 1-1, line 19). The post, in the form of a Story Highlight, advertised DBI's "Crown Vintage" brand of shoes and DSW's retail stores. (Declaration of Fabien Thayamballi ("Thayamballi Decl.") ¶¶ 3-5, Exs. 1-2; *see id.* Ex. 3 at DSW_040584 ([redacted]

---

[1] *See, e.g.*, https://www.modernretail.co/operations/designer-brands-president-we-want-to-build-a-diversified-portfolio-of-owned-brands/ (identifying DBI's "owned" brands, including Crown Vintage).

[redacted])).[2] DBI has made other posts promoting its brands and products. (*Id*. Ex. 4).

**B. DBI's Refusal To Provide Jurisdictional Discovery**

DBI challenges this Court's personal jurisdiction but has stymied the discovery needed to resolve that challenge. DBI previously agreed to produce documents and communications regarding its marketing and sales activities in California, including its relationships with California influencers. (*Id.* Ex. 5). But after a year of litigation, DBI had produced a single document—until last week, when SME disclosed it was moving to compel, and DBI then produced several hundred emails. (Thayamballi Decl. ¶ 9).

DBI refuses to search the emails of any custodian other than Renee Reinke, DBI's Director of Communications since 2021. (*Id.* Ex. 6 at 2-3; Ex. 7). DBI also has refused to provide information about any other potential custodian involved in public relations or marketing (except for Ms. Reinke's predecessor and an "HR professional" who supports her), on the ground that no such employees exist. (*E.g.*, *id.* Ex. 6 at 2-3). SME, however, has found several individuals whose LinkedIn profiles state they were responsible for DBI's marketing or social media during the relevant period. (*Id.* Ex. 8).

**C. DBI's Marketing Activities**

DBI's position that only Ms. Reinke is a relevant custodian rests largely on its claim that DBI is merely a holding company that does no marketing, either for itself or its subsidiaries. Defendants' counsel has represented to SME that (i) "there is no marketing department at DBI—only a corporate communications / PR professional, who is Ms. Reinke," (ii) "Ms. Reinke is the sole person at DBI who handles communications," and (iii) "DBI does not do marketing." (*Id.* Ex. 6 at 2-3).

But publicly available evidence is to the contrary. For example, a recent DBI

---

[2] DBI contends this Instagram post never existed, but the evidence is to the contrary. (Thayamballi Decl. ¶¶ 3-5, Exs. 1-2). Regardless, "Plaintiffs are not required to prove their case on the merits in order to obtain discovery." *Kadrey v. Meta Platforms, Inc.*, No. 23-CV-03417-VC (TSH), 2025 WL 240847, at *2 (N.D. Cal. Jan. 8, 2025).

post on LinkedIn demonstrates that Ms. Reinke is not the only person at DBI who handles communications. Rather, in that post, DBI recently congratulated its entire "Corporate Communications *team*," including "Renee Reinke, Director of Corporate Communications," for winning a PR award. (*Id.* Ex. 9 (emphasis added)). Other evidence from social media contradicts DBI's assertion that Ms. Reinke works alone as well as its assertion that it engages in no marketing or promotion, including via social media. Rather, many individuals on LinkedIn hold themselves out as having worked for DBI in communications, marketing, or social media.[3] DBI also recently posted a job listing for a "Brand Marketing Specialist." (*Id.* Ex. 12). Moreover, DBI posts advertisements on its own Instagram account, including the infringing DBI post over which SME sues, promoting its brands and its subsidiaries. *See supra* at 1-2.

In addition, for many years, DBI has hired "influencers" to promote Defendants' brands and products on social media.[4] DBI initially denied this fact, including in a sworn declaration from its in-house counsel Katherine Alfano (Dkt. 24-8 ¶¶ 4, 9, 10(b)), but DBI was forced to come clean after SME confronted Defendants with contrary evidence. (Thayamballi Decl. Ex. 13). Since then, Defendants produced [redacted]. (Thayamballi Decl. ¶ 18; *see, e.g.*, *id.* Exs. 14-18). [redacted]. (*See id.*).

As a result, Ms. Alfano submitted a "Supplemental Declaration" in which she

---

[3] *Id.* Exs. 10 (communications: Gretchen Whitaker, Brenna Schoen-Roth); 11 (copywriting: Mara Roberts); 8 (marketing, influencers, social media: Tiffany Weller, Haley Jones, Alethea Stewart, Mallori Albright). DBI says its subsidiaries employed the last three individuals (*id.* ¶ 12), but that does not mean they did not market and promote DBI, as their job descriptions state.

[4] https://designerbrands.com/news/marketing-partnerships/ ("Designer Brands occasionally partners with select influencers.").

admitted her prior declaration "was based on incomplete information and is inaccurate" (Dkt. 75-1 ¶ 3) and that paragraph 9 of that declaration, which said "DBI does not contract with or employ … influencers," was wrong (*id.* ¶ 4). Ms. Alfano nevertheless continued to downplay DBI's role, suggesting that DBI subsidiaries had "identif[ied] DBI … as the contracting party" without DBI's authorization. (*Id.* ¶¶ 5-6 ("We have instructed that this practice stop.")).

But that too is false. [redacted]. (Thayamballi Decl. Ex. 3 at DSW_040585). [redacted] (*Id.* Ex. 19). [redacted] (*Id.* Ex. 3 at DSW_040584). [redacted] (*Id.* Exs. 16-17, 20-22).

It is also implausible that [redacted] (Thayamballi Decl. ¶ 19). [redacted] (*Id.*). [redacted]

**D. DBI's Marketing Executives: Julie Roy And Kelly Ballou**

Marketing executives Julie Roy and Kelly Ballou are two of the individuals who [redacted]. (*E.g.*, Thayamballi Decl. Exs. 18, 23-

26). SME seeks to add these two executives to DBI's list of custodians.

**1. Julie Roy.** According to her LinkedIn profile, Julie Roy served as DSW's Chief Marketing Officer from 2020 through 2024. (*Id.* Ex. 27). DBI has admitted, however, that Ms. Roy also "held the position of Senior Vice President at DBI." (*Id.* Ex. 13 at 2). DBI claims this is irrelevant because, supposedly, Ms. Roy's "title (and role) of Chief Marketing Officer was at DSW" only. (*Id.*). The evidence produced in discovery contradicts that representation.

When Ms. Roy [redacted] (*Id.* Exs. 23-24). Furthermore, the press release from DBI's "2022 Investor Day" refers to Ms. Roy simply as "Chief Marketing Officer," alongside DBI's other C-suite executives, and notes that she "will discuss the Company's customer base and related strategies." (*Id.* Ex. 28 at 2). The relevant text does not mention DSW:

> During the Investor Day, Roger Rawlins, Chief Executive Officer, will discuss the Company's overall mission, vision, strategies and growth opportunities; Julie Roy, Chief Marketing Officer, will discuss the Company's customer base and related strategies; Jim Weinberg, Chief Merchandising Officer and Sarah Rosen, SVP of Marketing and Communications, Camuto Group, will talk about our approach to building our Owned Brands; [and] Bill Jordan, President and Chief Growth Officer, will review the Company's vision relating to sourcing and supply chain ….

(*Id.*). During the Investor Day presentation, DBI's CEO referred to Ms. Roy as "the Chief Marketing Officer of our organization," and Ms. Roy discussed marketing for DBI as a whole—not any isolated subsidiary. (*Id.* Ex. 29 at 5). She told investors: "We have tremendous relationships with celebrities, influencers, media partners, editors that will continue to leverage as we grow our Owned Brands into the future. … Speaking of customer acquisition, we now enroll almost 7 million members annually across

DBI. That's a 56% increase from where we were in 2017, inclusive of Canada and Camuto growth." (*Id.* at 7).

Thus, even if Ms. Roy was formally the Chief Marketing Officer of DSW, she *functioned* as DBI's chief executive in charge of marketing. Notably, DBI's use of DSW's marketing officer to perform functions across DBI was no aberration. For instance, the LinkedIn profile of DSW's former Vice President of Creative states that he "[c]reated bespoke brand creative for *DBI owned* brands Vince Camuto, Crown Vintage featuring Emma Roberts[,] and LeTIGRE[,] and the seasonal creative campaigns for *DSW owned* channels," and that he "[a]dvised licensed footwear creative efforts for [DBI's] Lucky Brand, Jessica Simpson [brand,] and others." (*Id.* Ex. 30 at 2 (emphasis added)).

Defendants have agreed to treat Ms. Roy as a DSW custodian for merits discovery, but not as a DBI custodian for jurisdictional discovery. (*Id.* Ex. 31 at 1).

**2. Kelly Ballou.** The LinkedIn profile of Kelly Ballou states that she serves as "Vice President of Marketing, Brand Strategy + Creative" for "N[orth] A[merica] Retail" at "Designer Brands Inc, DSW + [Canadian affiliate] ShoeCo." (*Id.* Ex. 32 at 1). Ms. Ballou joined Defendants in 2024, after Ms. Roy's departure. (*Id.*). In addition to "[l]eading brand strategy, brand marketing, integrated marketing and creative for DSW," she also "[l]ead[s] all facets of strategy and creative development for the advertising of the North American Retail Segment for DBI, including DSW and ShoeCo." (*Id.* at 3). In February 2026, Ballou [redacted] (*Id.* Ex. 18 at DSW_038221).

At the IDC, Defendants' counsel claimed that Ms. Ballou's marketing role at DBI was the result of a recent corporate reorganization, and that she is therefore not a relevant custodian with respect to activities that took place years earlier. Defendants have not yet produced any evidence substantiating that assertion. If Ms. Ballou began performing marketing functions for DBI only very recently, DBI should identify the

individuals who performed those functions before her and include them as custodians.

## ARGUMENT

It is impossible for SME to know how many relevant custodians DBI has concealed through its stonewalling. DBI has prevented SME from even identifying the universe of people who possess relevant information about DBI's California-related marketing activities. Against this backdrop, the Court should order DBI to search the emails and files of the two additional DBI custodians—Julie Roy and Kelly Ballou—SME has been able to identify through its own investigation.

SME has set forth above compelling evidence that Ms. Roy was effectively the chief marketing officer of DBI during much of the relevant period, and that Ms. Ballou assumed a similar role at some point after Ms. Roy's departure. Both Ms. Roy and Ms. Ballou [redacted]. These are not peripheral witnesses: they are the architects of DBI's marketing program. Their emails and files are virtually certain to contain information concerning DBI's efforts to exploit the California market, hire California influencers, and otherwise transact business in California. Moreover, the information they possess is unlikely to be duplicative of Ms. Reinke's, in that DBI has repeatedly claimed it does no marketing and has no marketing department itself, effectively telling the Court that SME should not expect to receive marketing-related documents from Ms. Reinke.

SME's request that DBI search more than a *single custodian* in jurisdictional discovery is eminently reasonable. This is federal litigation between two major companies over the infringement of intellectual property. DBI has approximately $3 billion in annual net sales and $1.3 billion in annual gross profits. (Dkt. 1 at 2 n.1; *see also* https://investors.designerbrands.com/2026-03-26-Designer-Brands-Inc-Reports-Fourth-Quarter-and-Fiscal-Year-2025-Financial-Results). DBI stands accused of using without authorization a copyrighted sound recording from one of the world's most popular recording artists, for which SME could recover its substantial lost licensing fee and the profits DBI made as a result of the infringement or, alternatively, up to

$150,000 in statutory damages, plus its attorneys' fees. DBI has also [redacted]. (Thayamballi Decl. Exs. 14-15, 33). Adding Julie Roy and Kelly Ballou as custodians is thus "proportional to the needs of the case." *Fed. Trade Comm'n v. Uber Techs., Inc.*, 351 F.R.D. 150, 152 (N.D. Cal. 2026) (quoting Fed. R. Civ. Proc. 26(b)(1)).

DBI has suggested that no one at DBI, including Ms. Roy or Ms. Ballou, handled social media, such that, even if Ms. Roy or Ms. Ballou had general "marketing" responsibilities for DBI, their documents are not relevant to the jurisdictional inquiry because this case is about social media. However, both Ms. Roy and Ms. Ballou [redacted]. *See supra* at 5-6. Ms. Roy has also [redacted]. (*E.g.*, Thayamballi Decl. Exs. 25-26). Ms. Ballou even [redacted] (*Id.* Ex. 34).

Regardless, DBI is wrong that its California marketing activities outside of social media are irrelevant. As this Court previously held, a "defendant who has … substantially engaged with the forum – such as one who has 'continuously and deliberately exploited' the forum state's market – [is] subject to personal jurisdiction for causes of action that do not directly arise from those contacts, but that nonetheless 'relate to' them." (Order, Dkt. 36 at 8). Indeed, this Court found that DSW was subject to personal jurisdiction in part because it had "retail[] stores" and "shipping facility" in California and a "California Privacy Notice" on its website. (*Id.* at 16, 18).

DBI also wrongly contended at the IDC that it is unlikely to have relevant marketing documents because it did not own a number of the companies or brands at issue until recently, having acquired Topo only in 2022 and the Keds brand in 2023. But Topo's copyright infringement continued in the years after 2022, after DBI acquired it. Regardless, DBI has been *DSW's* parent for the entire period of DSW's alleged infringing conduct. *See, e.g.*, https://investors.designerbrands.com/2019-03-

19-DSW-Inc-Announces-3-Year-Strategic-Priorities-and-Financial-Goals-Changes-Name-to-Designer-Brands-to-Reflect-Strategy-and-Unique-Business-Model. That DBI allegedly has no relevant marketing materials related to Topo or Keds does not mean it has no relevant marketing materials related to itself or DSW.

Finally, DBI cannot hide behind corporate formalities to keep Ms. Roy off its custodian list. DBI admits that Ms. Roy was one of its officers (Senior Vice President), and even if her marketing documents for DBI reside with DSW, "[a] corporation must produce documents possessed by a subsidiary that the parent corporation owns or wholly controls." *United States v. Int'l Union of Petroleum & Indus. Workers, AFL-CIO*, 870 F.2d 1450, 1452 (9th Cir. 1989); *see also* Dkt. 25 (DBI wholly owns DSW and Topo).

Any doubts about the proper scope of discovery should be resolved against DBI. DBI has repeatedly misled SME about the nature of its activities and has submitted false declarations to the Court concerning its relationships with social media influencers—as has its affiliate and co-defendant Topo. In addition to the misrepresentations discussed above:

- Defendants' counsel represented to SME on May 28, 2026 that DBI "does not do marketing" (*id.* Ex. 6 at 3), even though it was reported a month earlier that Kelly Ballou was "vp of brand and creative for North American retail at Designer Brands Inc (DBI)[,] DSW's parent company" (*id.* Ex. 35), and Ms. Ballou [redacted] (*id.* Ex. 18).
- A Topo executive submitted a declaration to this Court in 2025 averring that "Topo has not contracted with or employed third parties who are in California to post content on social media on its behalf (*e.g.*, influencers) within at least the last three years." (Dkt. 24-9 ¶ 9). That was false. [redacted] (*Id.* Exs. 36-38). [redacted]

[redacted]. (*Id.* Exs. 39-40).

- Topo produced a list in discovery [redacted], and that list omitted Topo's PR manager from 2013 through 2023, who was based in California and helped Topo create social media posts. (*Id.* Exs. 41-44). SME discovered this relevant custodian/witness despite Topo's failure to include her on this list or in its interrogatory responses or initial disclosures. (Thayamballi Decl. ¶ 51).
- Defendants' counsel submitted a declaration to the Court stating that "Topo's 'Ambassadors' are not influencers working for Topo—at least in the traditional sense of the term," since they are merely "athletes supported by Topo." (Dkt. 53-3 ¶ 15). That was false, as demonstrated by [redacted], as well as Topo's internal documents that describe the program as a "social media brand ambassadorship" comprised of "[redacted]" with a "strong presence on social media" and who are required to "[d]emonstrate exclusive support for Topo." (Thayamballi Decl. Exs. 45-46; *see also id.* Ex. 47 at TOPO_076274 ([redacted])).

Defendants have proven themselves untrustworthy, so the Court should not credit their assertions that DBI has no responsive documents. Nor should the Court deny SME the requested relief due to any burden associated with some additional document collection and review related to adding just two custodians to DBI's current list of just one person. DBI has deprived SME of the information necessary for the parties to reach a fair compromise concerning DBI's email searches, and thus it is DBI who should bear the cost of some additional email searches, even if those searches do not result in the identification of responsive documents.

## CONCLUSION

For the foregoing reasons, SME respectfully requests that the Court grant this motion and order DBI to include Julie Roy and Kelly Ballou on its custodian list.

Dated: New York, New York
July 28, 2026

SHAPIRO ARATO BACH LLP

By: /s/ Cynthia S. Arato

Cynthia S. Arato (SBN 156856)
carato@shapiroarato.com
Fabien M. Thayamballi (SBN 284752)
fthayamballi@shapiroarato.com
1140 Avenue of the Americas, 17th Fl.
New York, New York 10036
Telephone: (212) 257-4880

*Attorneys for Plaintiffs*
SONY MUSIC ENTERTAINMENT, SONY MUSIC ENTERTAINMENT US LATIN LLC, ARISTA MUSIC, ARISTA RECORDS, LLC, ULTRA RECORDS, LLC, ZOMBA RECORDING, LLC, RECORD LABEL, LLC, AND LAFACE RECORDS, LLC